1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ECHOLOGICS, LLC, *et al.*,<br><br>                            Plaintiffs,<br><br>    v.<br><br>ORBIS INTELLIGENT SYSTEMS, INC.<br><br>                            Defendant. | Case No. 21-cv-01147-BAS-AHG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE (ECF No. 18)** |

In this patent infringement action, Plaintiffs Echologics, LLC; Mueller International, LLC; and Mueller Canada, Ltd. (collectively "Plaintiffs") allege that Defendant Orbis Intelligent Systems, Inc. ("Orbis") has infringed one of its Echologics' patents.  (ECF No. 1.)  Defendant Orbis moves pursuant to 28 U.S.C. § 1404(a) to transfer this action to the District Court of Delaware (ECF No. 18), which Plaintiffs oppose (ECF No. 19).  The motion is suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).  For the reasons herein, the Court **DENIES** Defendant's motion to transfer.

21cv1147

1

## I.    BACKGROUND

"Plaintiffs Echologics, LLC, Mueller International, and Mueller Canada are indirect subsidiaries of Mueller Water Products, Inc., a public company with subsidiaries that are manufacturers of products and services used in the transmission, distribution, and measurement of water." (Compl. ¶ 10.) "Echologics provides technologies, products, and services that can non-invasively detect underground leaks and assess the condition of water mains." (*Id.* ¶ 11.)    Echologics holds patents covering related water monitoring technologies, including the patent at issue here: U.S. Patent No. 10,881,888 ("the '888 patent"). (*Id.* ¶¶ 11–12, 14.)  Technology covered in the '888 patent includes a "nozzle cap" that when attached to a fire hydrant, turns it into a "'smart' fire hydrant that can detect leaks early" and notify utility companies efficiently. (*Id.* ¶ 13.)  Within the nozzle cap, an attached "antenna cover . . . is used to transmit a signal carrying data gathered by one or more sensors . . . ." (*Id.*)

Defendant Orbis is a private company incorporated in Delaware and headquartered in San Diego.  (Compl. ¶ 6; Def.'s Mem. P & A ISO Mot. to Transfer ("Def.'s Mem."), ECF No. 18-1 at 16:7.)  Orbis has developed and patented "innovative sensors that can be used to detect leaks and defects in water pipes and pipe walls." (Def.'s Mem., at 2:11–12.) Its product, the Prodigy SmartCap, was designed with "its sensors built into a cap that screws onto fire hydrants[.]"  (*Id.* at 2:14–15.)    Orbis sent its "first deliveries of the SmartCap product . . . to customers in June 2020." (*Id.* at 2:15–16.)

Prior to this suit, Plaintiffs filed a claim in October 2019 against "Orbis in the District of Delaware for patent infringement of U.S. Patent Nos. 10,305,178 and 10,386,257." (*Id.* at 2: 18–20.)  United States District Court Judge Richard G. Andrews presided over the case.  The patents at dispute in Delaware covered similar technology for products with a "nozzle cap configured to mount on a fire hydrant."  (*Id.* at 4:7–8.)  Orbis attaches transcripts from the Delaware litigation: the first transcript is from a discovery dispute videoconference on July 29, 2020, and the second transcript is from a joint conference discussing the terms of a potential settlement on February 25, 2021.  (*See* Ex. 1 to Geyer

Decl. in Supp. ("Disc. Conf."), ECF No. 18-3 ¶ 2; Ex. 2 to Geyer Decl. in Supp. ("Settlement Conf.") ECF No. 18-4 ¶ 3.)   In the Delaware litigation, Judge Andrews facilitated conversations between the parties to reach a resolution without involving himself with the substantive merits of the case.  (*See* Disc. Conf, at 3:13–21; Settlement Conf., at 11–12.)  A point of contention relevant to this motion arose during a hearing with Judge Andrews.  (*Compare* Def.'s Mem., at 9:24–26, 10:1–5; *with* Opp'n, ECF No. 19 at 10:6–16.)   Plaintiffs acknowledged that it would be helpful to inspect Orbis' alleged infringing product not only to determine if the product infringed on their patents in that suit but also to see if other patents not alleged in the complaint might have been violated.  (Disc. Conf., at 15: 6–11.)  Judge Andrews advised Plaintiffs that using discovery to investigate whether other future claims might be filed was an "abuse of discovery." (*Id.* at 15:17–21.)

Later, the parties agreed to dismiss the action, and Judge Andrews facilitated discussions between the parties regarding the terms of dismissal.  (*See* Settlement Conf.) Orbis' counsel expressed concerns about Judge Andrew's involvement in the settlement discussions.  (*Id.* at 11:25, 12:1–7.)  Judge Andrews responded: "if either side thinks some time after today that I've involved myself too much in talking about your positions or essentially trying to settle this case . . . just write me a letter, and I'll get it reassigned to a different judge if you're going to go forward and litigate." (*Id.* at 18:16–21.)  After a year and a half of litigation, the parties agreed to dismiss the case with prejudice on June 21, 2021.  (*Id.* at 3:7, 24–25.)  The following day, Echologics filed this action in the Southern District of California against Orbis for allegedly infringing Echologics' '888 patent. (Compl. ¶ 1.)

## II.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought[.]" 28 U.S.C. § 1404(a).  Section 1404 "place[s] discretion on the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

21cv1147

District courts employ a two-step framework to resolve a transfer motion.  A court first asks whether the plaintiff could have originally brought the action in the proposed transferee forum.  *Nat'l Prods. v. Wireless Accessory Solutions, LLC*, No. C15-2024JLR, 2018 WL 1709494, at *2 (W.D. Wash. Apr. 9, 2018) (citing *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)); *Ironworks Patents LLC v. Samsung Elecs. Co*., No. 17-cv-01958-HSG, 2017 WL 3007066, at *1 (N.D. Cal. July 14, 2017).  If the action could have been brought there, then the court considers the propriety of transfer.  *Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.*, No. 12-cv-911-IEG-WMC, 2012 WL 2068728, at *2 (S.D. Cal. June 8, 2012).

## III.   ANALYSIS

Defendant moves to transfer this case to the District of Delaware pursuant to 28 U.S.C. § 1404(a) on the grounds that litigating this case there would be in the interest of justice to avoid forum shopping and preserve judicial economy.  (Mot. to Transfer, at 1–2.)  The Court rejects both arguments.

### A.   The Action Could Have Been Brought in the District of Delaware

No party affirmatively disputes that this action could have been brought in the District of Delaware.  However, because a defendant cannot waive Section 1404's "might have been brought" requirement, the Court must address it here.  *See In re Bozic*, 888 F.3d 1048, 1053 (9th Cir. 2018).  "The phrase where an action 'could have been brought' is interpreted to mean that the proposed transferee court would have subject matter jurisdiction, proper venue, and personal jurisdiction."  *Peregrine Semiconductor Corp.*, 2012 WL 2068728, at *2 (citing *A.J. Indus., Inc. v. U.S. Dist. Ct. for Central Dist. of Cal*., 503 F.2d 384, 386–88 (9th Cir. 1974) and *Shapiro v. Bonanza Hotel Co*., 185 F.2d 777, 779–81 (9th Cir.1950)); *see also Amazon.com v. Cendant Corp*., 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005) (concluding there was "no question" action could have been brought in proposed transferee forum by analyzing venue as well as subject matter and personal jurisdiction in the transferee forum).  The Court addresses each of these considerations.

### 1. Subject Matter Jurisdiction

The District of Delaware would have subject matter jurisdiction over Plaintiffs' federal patent infringement claims. *See* 28 U.S.C. § 1338(a); *AstraZeneca Pharms. LP v. Apotex Corp.*, 669 F.3d 1370, 1377 (Fed. Cir. 2012) ("The district courts have original jurisdiction over any civil action arising under any Act of Congress relating to patents."). Thus, this consideration is satisfied.

### 2. Venue

A district court's broad discretion to transfer a case is subject to the prohibition that an action cannot be transferred to a district in which venue would have been improper if the action were originally filed there. *See Finjan, Inc. v. Sophos Inc.*, No. 14-cv-01197-WHO, 2014 WL 2854490, at *2 (N.D. Cal. June 20, 2014).

The federal patent venue provision establishes that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). For the purposes of Section 1400(b), a domestic corporation "resides" only in the state where it is incorporated. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017); *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 265 F. Supp. 3d 1196, 1200 (D. Or. 2017) ("*TC Heartland* reaffirmed that for venue purposes in patent cases, a domestic corporation 'resides' only in its state of incorporation."). Orbis is incorporated in Delaware, (Compl. ¶ 6), and thus, Section 1400(b)'s first clause is satisfied to establish venue in the District of Delaware. Therefore, venue would have been proper in the District of Delaware.

### 3. Personal Jurisdiction

Neither party disputes that the District of Delaware could exercise personal jurisdiction. "The question of personal jurisdiction[] goes to the court's power to exercise control over the parties." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). "Rule 4 is the starting point for any personal jurisdiction analysis in federal court." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir.

2009).   Pursuant to Rule 4(k)(1)(A), "[f]ederal courts apply state law to determine the bounds of the jurisdiction over a party."  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(1)(A)).  This "involves two inquiries: whether a forum state's long-arm statute permits service of process and whether the assertion of personal jurisdiction violates due process."  *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed Cir. 2009).

Delaware's long-arm statute permits service of process when the defendant is incorporated in Delaware.  *Papendick v. Bosch*, 410 A.2d 148, 152 (1979).  To comport with due process, the defendant must have sufficient "minimum contacts" such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The minimum contacts requirement may be sustained when "ownership aris[es] from the purposeful utilization of the benefits and protections of the Delaware Corporation Law in activities related to the underlying cause of action."  *Papendick*, 410 A.2d, at 152.

Here, Defendant was incorporated in Delaware, which complies with Delaware's long-arm statute.  (Def.'s Mem., at 7:20.)  A Delaware court's exercise of personal jurisdiction over Defendant also comports with due process considerations because by extension of its incorporation in Delaware, Defendant benefitted from the protections of the Delaware laws as it relates to this patent infringement claim.  Thus, the District of Delaware would have personal jurisdiction over Defendant.  Accordingly, this case could have been brought in the District of Delaware.

## B.   Propriety of Transfer

When an action could have been brought in the potential transferee court, a district court must decide whether transfer is appropriate.  *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1105–06 (N.D. Cal. 2001).  Section 1404(a) expressly identifies the following considerations: "convenience of the parties," "convenience of . . . witnesses," and "the interest of justice."  28 U.S.C. § 1404(a).  Although the statute identifies only these factors, courts deem "*forum non conveniens* considerations [to be] helpful in deciding a § 1404

- 6 -

transfer motion." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).   District courts therefore consider the following factors to decide a transfer motion: (1) the plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) relative court congestion and time to trial in each forum.   *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000); *Barnes & Noble, Inc..*, 823 F. Supp. 2d at 993.   "This list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand." *Martin v. Glob. Tel\*Link Corp.*, No. 15-CV-00449-YGR, 2015 WL 2124379, at *2 (N.D. Cal. May 6, 2015).

The movant bears the burden to show "by particular circumstances" that the balance of the factors favors transfer.   *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Amazon.com*, 404 F. Supp. 2d at 1259; *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1155 (S.D. Cal. 2005).   Transfer is not appropriate if it is sought as a matter of a defendant's mere preference for another forum or if transfer would merely shift inconvenience to another party.   *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964). Here, the Court concludes that Defendant has not met its burden to show that transfer to the District of Delaware is warranted.

**1.    Deference to Plaintiff Echologics' Choice of Forum is Substantially Reduced**

A court may afford "great weight" to the plaintiff's choice of forum, especially "when the plaintiff has chosen to file the lawsuit in its home forum." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Finjan, Inc.*, 2014 WL 2854490, at *3.   But the deference to the plaintiff's choice is "substantially reduce[d] . . . when the plaintiff does not reside in the forum." *McGaff v. Aetna*, No. CIV. S–10–1467 LKK/EFB, 2010 WL 5394203, at *2 (E.D. Cal. Dec. 21, 2010) (citations omitted); *Saleh*, 361 F. Supp. 2d at 1158; *see also Gemini Capital Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998). Deference to "the plaintiff's chosen venue is substantially reduced . . . where the forum

lacks a significant connection to the activities alleged in the complaint." *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) (internal quotation marks and brackets omitted).

Plaintiffs do not reside in the Southern District of California. Echologics and Mueller International reside in Delaware with their principal places of business in Georgia, while Mueller Canda resides and has its principal place of business in Canada. (Compl. ¶¶ 3–5.) Accordingly, deference to Echologics' choice of forum in the Southern District of California is substantially reduced and this factor weighs minimally against transfer.

### 2. The Convenience of the Parties Favors the Southern District of California

#### a. The Possible Delay from Transfer is Minimal

Delay is a relevant consideration in assessing the convenience to the parties of transfer. *See Credit Acceptance Corp. v. Drivetime Automotive Grp., Inc.*, No. CV 13-01531 (MRWx), 2013 WL 12124382, at *2 (C.D. Cal. Aug. 5, 2013). "[U]nreasonable delay caused by transfer will necessarily result in injury and inconvenience to the parties and therefore the court must consider the duration of the pendency of the litigation prior to the motion to transfer." *Id.* (citing *Moore v. Telfon Commc'ns Corp.*, 589 F.2d 959, 968 (9th Cir. 1978); *Barnstormers, Inc. v. Wing Walkers LLC*, No. 09-CV-2367, 2010 WL 2754249 (S.D. Cal. July 9, 2010)). This case was filed on June 22, 2021. (Compl., at 13:23–24) Defendant Orbis moved to transfer venue less than two months after Plaintiffs filed the case. (Def.'s Mem., at 1:22.) The request to transfer has thus arisen in the nascent stages of this litigation.

#### b. The "Center of Gravity" is in the Southern District of California

Typically, "[t]he location of the alleged infringer's principal place of business . . . is often the critical and controlling consideration in adjudicating a motion to transfer venue." *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. 3:02-CV-2538, 2003 WL 21251684, at *3 (N.D. Tex. May 23, 2003); *see also Shipping & Transit LLC v. Adorama,*

- 8 -

*Inc.* 2016 WL 9114146 at *4 (C.D. Cal. Aug. 23, 2016).   In a patent infringement case, "the parties' convenience will be served by facilitated access to the witnesses and documents that disclose the history of [the defendant's] relevant products and the design and development of the devices that plaintiff accuses of infringement."   *Arete Power, Inc. v. Beacon Power Corp.*, No. C 07-5167 WDB, 2008 WL 508477, at *6 (N.D. Cal. Feb. 22, 2008) (citing *B&B Hardware, Inc. v. Hargis Indus.*, No. CV 06-4871-PA (SSx), 2006 WL 4568798 at *4 (C.D. Cal. Nov. 30, 2006)); *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 331 (E.D.N.Y. 2006).   Thus, "the district court ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production."   *Amazon.com*, 404 F. Supp. 2d at 1260; *see also Credit Acceptance Corp.*, 2013 WL 12124382, at *3 (same).   This is referred to as the "center of gravity" of the alleged infringing activity.   *See Anza Tech., Inc. v. Toshiba Am. Elec. Components, Inc.*, No. 2:17-01688 WBS DB, 2017 WL 6538994, at *4  (E.D. Cal. Dec. 21, 2017) ("In patent cases, 'the preferred forum is 'that which is the center of gravity of the accused activity.'"); *see also Synopsis, Inc. v. Mentor Graphics Corp.*, No. C 12-5025 MMC, 2013 WL 1365946, at *5 (N.D. Cal. Apr. 3, 2013) ("[T]he center of the accused activity is the district in which the defendant is alleged to have developed, tested, researched, produced, marketed, and made sales decisions concerning the accused product.") (citation omitted).

Defendant's principal place of business is in San Diego.  (Mot. to Transfer, at 7:20.) In their Complaint, Plaintiffs allege Orbis "committed acts of infringement in this [d]istrict." (Compl. ¶ 8.)   Accordingly, Orbis' conduct and its alleged infringing activity would be centered in the Southern District of California.   Thus, this factor weighs against transfer.

### 3.   The Convenience of the Witnesses Weighs Against Transfer

"[T]he convenience of the witnesses is the most important consideration in determining whether to transfer venue." *Shipping & Transit LLC*, 2016 WL 9114146, at *3; *Secured Mail Solutions, LLC v. Advanced Image Direct, LLC*, No. SACV 12-01090-DOC(MLGx), 2013 WL 8596579, at *5 (C.D. Cal. Jan. 30, 2013); *Bradley-Brown v. Am.*

*Home Mortg. Servicing, Inc.*, No. SACV 11-1132 DOC, 2012 WL 254064, at \*2 (C.D. Cal. Jan.25, 2012).  "To show inconvenience to witnesses, the moving party should state the witnesses' identities, locations, and content and relevance of their testimony." *Meyer Mfg. Co. Ltd. v. Telebrands Corp.*, No. CIV. S–11–3153 LKK/DAD, 2012 WL 1189765, at \*6 (E.D. Cal. Apr. 9, 2012) (citing *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092–93 (N.D. Cal. 2002)); *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998).  In considering the convenience factor, courts should consider "not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues in the case." *Kannar v. Alticor, Inc.*, No. 08-5505, 2009 WL 975426, at \*2 (N.D. Cal. Apr. 9, 2009).  The Court separately discusses party and non-party witnesses.

### a.  Party Witnesses

"The convenience and cost of attendance for witnesses is an important factor in the transfer calculus" because "additional distance from home means additional travel time . . . [which] increases the probability for meal and lodging expenses" and "additional time with overnight stays increase the time which these fact witnesses must be away from their regular employment." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009). "[T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) (en banc)).  Courts generally discount the inconvenience to a party's employee witnesses—whom a party may compel to testify—in the transfer analysis.  *See HollyAnne Corp. v. TFT Inc.*, 199 F.3d 1304, 1307 n.2 (Fed. Cir. 1999) (noting that the location of employee witnesses "is not as important a factor as it would be if they were not under the defendant's control and it would be forced to subpoena those witnesses and therefore require the court to have jurisdiction over them"); *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008); *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) (holding that a party may compel the testimony of its employees at trial).

Orbis states that the key witness in this case is the founder and CTO of Orbis, Danny Krywyj. (Def.'s Mem., at 14:6–7.) Orbis states that Mr. Krywyj "will testify to the design, development, and/or manufacture of the accused SmartCap product, sales and offer for sales of the accused SmartCap product, and competitive information relating to the accused SmartCap product." (*Id.* at 14:7–10.) The parties identify different locations for where they believe Mr. Krywyj resides. (*Compare id.* at 14:14–21, *with* Opp'n at 13:1–18.) Orbis clarifies that while Mr. Krywyj typically resides in San Diego, he is spending most of his time in England during the pandemic. Plaintiffs speculate that the pandemic's negative influence on travel plans will lessen during this litigation and argue that Mr. Krywyj is likely to return to San Diego permanently during this litigation. (Opp'n, at 13:15–18.) Due to Mr. Krywyj's position and employment at Orbis, the Court finds Orbis is in a better position to identify Mr. Krywyj's residency. Thus, the Court will consider Mr. Krywyj a resident of England for purposes of deciding witness convenience but notes Mr. Krywyj's connections to San Diego. Further, Orbis provides that it will likely call "the prosecuting attorneys of the asserted patent, the inventors of the asserted patent, and corporate employees at Mueller" who to the best of Orbis's knowledge, reside in Georgia and Canada. (Def.'s Mem., at 14:22–25.)

In its opposition, Echologics provides that it will seek testimony from Orbis' Director of Engineering, Jeff Prsha; Technical Lead Engineer, Christopher Espinoza; and Senior Electronics Engineer, Jore Acosta. (Opp'n, at 13–14.) Echologics indicates these three witnesses live in San Diego and are employed by Orbis, according to their LinkedIn profiles. (*Id.* at 13:24, 14:1–8; *See* Exs. 11–13 to Nixon Decl. in Opp'n ¶¶ 14–16 ECF 19-1.) Defendant Orbis does not dispute this information it its reply.

### b.    Non-party Witnesses

"[P]articular consideration is given to the convenience of *non-party* witnesses" in the transfer analysis. *Credit Acceptance Corp.*, 2013 WL 12124382, at *4 (emphasis in original). The central inquiry is whether such witnesses are subject to compulsory process in the judicial forum where the case is being litigated so that their testimony can be

compelled for trial if necessary.  *See In re Ferrero Litig.,* 768 F. Supp. 2d 1074, 1080 (S.D. Cal. 2011); *Newegg, Inc. v. Telecomm. Sys.,* No. C 09-0982 JL, 2009 WL 1814461, at *7 (N.D. Cal. June 23, 2009).   Although videotaped deposition testimony is available, "[o]ffering unavailable witnesses' testimony via videotaped deposition testimony is disfavored[.]"  *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.,* 472 F. Supp. 2d 1183, 1194 (S.D. Cal. 2007).  Thus, "[i]n assessing the effect of a transfer on the convenience of witnesses, courts consider the effect of a transfer on the availability of certain witnesses, and their live testimony, at trial."  *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League,* 89 F.R.D. 497, 501 (C.D. Cal. 1981).  "The aim is to minimize the risk of 'trial by deposition.'"  *Worldwide Financial LLP v. Kopko,* No. 1:03-CV-0428-DFH, 2004 WL 771219, *3 (S.D. Ind. Mar. 18, 2004).

Pursuant to Federal Rules of Civil Procedure 45(b)(2)(C), a district court may compel attendance through the issuance of a subpoena at any place within the district of the court by which it is issued or at any place within 100 miles of where the deposition, trial, or hearing is being held.  Fed. R. Civ. P. 45(b)(2)(C).  The presence of a substantial number of witnesses within the subpoena power of a district can weigh in favor of transfer to that district.  *See In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009).

To oppose transfer, Echologics states that it will likely seek testimony from two past Orbis Sales Directors: Tacy Hernandez and Simon Wick.  (Opp'n, at 13–14.)   As represented in their LinkedIn profiles, Mr. Wick resides in San Diego; however, Ms. Hernandez resides in Colorado.  (Exs. 9–10 to Nixon Decl. in Opp'n.)  The Court may rely on counsel's assertions regarding these two non-party witnesses because the ultimate concern is whether Delaware is more convenient.  *See Costco Wholesale Corp.,* 472 F. Supp. 2d at 1194 (overruling hearsay objection on § 1404(a) motion, noting that the "only pertinent consideration" is the unchallenged fact that one forum would put the third-party witnesses outside the court's subpoena power).  Counsel's representations regarding these witnesses weigh against transfer as at least one non-party witness is within the subpoena power of the Court.

- 12 -

In sum, according to the parties, four potential witnesses—including a non-party witness—reside in San Diego, while an unspecified number of witnesses reside out of the state or country. However, none of the witnesses reside in Delaware. Therefore, any weight given to the few witnesses who live closer to Delaware is minimal when compared to the number of witnesses residing in this district. Thus, the Court finds the convenience of witnesses weighs against transfer.

### 4. There is Relatively Greater Ease of Access to Sources of Proof in the Southern District of California

Orbis argues "[t]his factor is neutral [because] [t]he evidence in this case involves mainly electronic records." (Def.'s Mem., at 17: 21–22.) Further, Orbis argues that an inspection of the accused, infringing product was completed in Georgia during the previous Delaware litigation so it should be assumed Georgia is where the product would be inspected again in this case. (*Id.* at 18:4–7.) "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d at 1346; *Neil Bros. Ltd.*, 425 F. Supp. 2d at 330.

Orbis does not state where its electronic records are kept nor where its alleged infringing product is manufactured. Orbis is headquartered in San Diego where the electronic records are likely contained. (Def.'s Mem., at 7:20.) Additionally, while the alleged infringing product may have been inspected in Georgia in the previous litigation, an inspection at Orbis' San Diego facility is not only a viable option for this litigation but would also provide easier access to the product at its originating source. (*See* Ex. 2-B to Nixon Decl. in Opp'n ¶ 5.) Thus, there is greater ease of access to sources of proof in the Southern District of California.

### 5. Each Forum is Familiar with the Applicable Law

Echologics only raises a federal patent infringement claim. Federal courts are equally familiar with federal patent law. *Peregrine Semiconductor Corp.*, 2012 WL 2068728, at *8 ("[W]here federal law governs all claims raised, either forum is equally

21cv1147

capable of hearing and deciding those questions." (citations omitted)); *Pac. Scientific Energetic Materials Co. (Arizona) LLC v. Ensign-Bickford Aerospace & Def. Co.*, No. CV-10-02252-PHX-JRG, 2011 WL 4434039 at *8 (D. Ariz. Sept. 23, 2011); *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1112 (C.D. Cal. 2007).

Orbis argues that this factor should favor transfer because the Delaware court that adjudicated the previous patent infringement claims "[is] not only familiar with the applicable law but many of the applicable facts." (Def.'s Mem., at 17:14–16.) However, in the transcripts provided to this Court by Orbis, Judge Andrews acknowledges that he did not look closely at the merits of the case. (*See* Disc. Conf, at 3:13–18.) Additionally, the docket report indicates that the matter was dismissed before the Delaware court was asked to resolve any dispositive motions. (*See* Ex. 7 to Nixon Decl. in Opp'n ¶ 10.) Instead, the parties' discussions with the court revolved around the terms of a potential settlement and dismissal. (*See* Settlement Conf, at 5:1–13.) Further, due to his involvement in settlement discussions, Judge Andrews offered to recuse himself in the future should either party request him to do so. (*See id.* at 18:14–21.) Thus, the Court is not persuaded that Judge Andrews is more familiar with the applicable facts in this case, nor that he would adjudicate further litigation between the parties on a similar patent infringement claim. Accordingly, this factor is neutral.

**6.    The Southern District of California Has a Stronger Local Interest**

Orbis briefly argues that the sixth factor—forum's local interest—is neutral as Orbis is "not aware of any particular local interest in the controversy . . . ." (Def.'s Mem., at 8:27–28.) The Court disagrees.

"[T]his factor takes into account the current and transferee forum's interest 'in having localized controversies decided at home[.]'" *Hangzhou Chic Intelligent Tech. Co. v. Swagway, LLC*, No. 16-cv-04804, 2017 WL 1425915, at *4 (N.D. Cal. Apr. 21, 2017) (quoting *Decker Coal Co.*, 805 F.2d at 843)); *Perez*, 2017 WL 66874, at *11. "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann-La Roche Inc.*,

587 F.3d 1333, 1338 (Fed. Cir. 2009).

Echologics alleges "Orbis is engaged in the design, manufacture, testing, use, importation, sale and/or offering for sale in the United States." (Compl. ¶ 27.) Indeed, "the sale of an accused product offered nationwide does not give rise to a *substantial* interest in any single venue[.]" *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338 (emphasis added); *eDigital Corp. v. Dropcam, Inc.*, No. 14-cv-1579-BEN-DHB, ECF No. 34-1 at 4 (S.D. Cal. Nov. 4, 2014) (citing *In re RS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008)); *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 878 (E.D. Tex. 2013) ("When the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district."). But the lack of a substantial interest does not mean there is no interest, only that the local interest on this basis is minimal.

Here, the Southern District of California—where the alleged, infringing activities took place—has a stronger local interest than the District of Delaware. A strong local interest exists in the forum where the defendant designed and developed the accused products because allegations of patent infringement "call[] into question the work and reputation of several individuals residing in order or near that district and who presumably conduct business in that community." *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1336; *Ironworks Patents LLC*, 2017 WL 3007066, at *3; *Reflex Packaging, Inc.*, 2013 WL 5568345, at *5. Orbis is headquartered in San Diego where it presumably designed and developed the accused product. (Def.'s Mem., at 16:7.) The Court has an interest in adjudicating a dispute that involves the reputation of a company conducting its business in this district. Thus, the Southern District of California has a stronger local interest.

The District of Delaware does not otherwise have a countervailing, localized interest that would rival the strong local interest of the Southern District of California. A strong local interest will exist in the forum where the plaintiff designed and developed the patents at issue. *See Plexxikon, Inc. v. Novartis Pharms. Corp.*, No. 17-cv-04405-HSG, 2017 WL 6389674, at *3–4 (N.D. Cal. Dec. 7, 2017). But Echologics does not allege, nor contend that it developed the patents-in-suit in the District of Delaware. (*See, e.g.*, Compl. ¶¶ 10–

21cv1147

14 (background about Echologics.))  While Echologics is incorporated in the District of Delaware, its headquarters are in Georgia.  (*Id.* ¶ 3.)  Accordingly, the Court concludes that this factor weighs in favor of the Southern District of California.

### 7.  Relative Court Congestion and Time to Trial is Neutral

Administrative considerations such as docket congestion are given little weight in assessing the propriety of a Section 1404(a) transfer.  *See Amini Innovation Corp.*, 497 F. Supp. 2d at 1112 (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir. 1984) (*forum non conveniens* case)).  And "this factor appears to be the most speculative" of the transfer analysis, undermining its role.  *In re Genentech, Inc.*, 566 F.3d at 1347.  Orbis briefly mentions that court congestion is a relevant factor in considering venue transfer but furthers a forum shopping argument to argue the Southern District of California should not be a "victim to forum shopping."  (Reply, at 8:5–10, ECF No. 20.)  Forum shopping will be considered separately below.  *See infra* Part III.B.8.b.  Regarding relative court congestion, all courts are experiencing some degree of congestion due to the ongoing pandemic.  Thus, this factor is neutral.

### 8.  The Interests of Justice Contravene Transfer

Finally, the Court addresses any other considerations raised by the parties under the interests of justice factor, a "catchall factor, which includes considerations of judicial economy and any other concerns that weigh on the decision to transfer."  *Secured Mail Solutions, LLC*, 2013 WL 8596579, at *6 (citing *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)); *Credit Acceptance Corp.*, 2013 WL 12124382, at *4 ("The interest of justice factor test focuses primarily on the judicial system's interest in the efficient and speedy resolution of litigation disputes[.]"); *Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 834 (N.D. Ill. 1999).  Judicial efficiency includes "trying related litigation together."  *Avritt v. Reliastar Life Ins. Co.*, No. C06-1435RSM, 2007 WL 666606, at *3 (W.D. Wash. Feb. 27, 2007).  "Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the

convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of California*, 119 F.3d at 1565.

In a patent case, judicial economy may be served by keeping cases involving overlapping or related patents before the same court. "[A] district court's experience with a patent in prior litigation and the co-pendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue." *In re EMC Corp.*, 501 Fed. App'x 973, 976 (Fed. Cir. 2013). But it is not the case that "judicial economy of having the same judge handle multiple suits involving the same patents should dominate the transfer inquiry[.]" *Id.* A district court must only consider "any judicial economy benefits which would have been apparent *at the time the suit was filed*[.]" *Id.* (emphasis added); *Round Rock Research LLC v. Asustek Computer Inc.*, 967 F. Supp. 2d 969, 981– 82 (D. Del. 2013) (discounting knowledge about overlapping patents and technology in other pending cases gained after the case was filed); *see also Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) (motions to transfer venue are to be decided based on "the situation which existed when suit was instituted.").

### a.     Previous Patent Claims in the District of Delaware

Another patent infringement lawsuit commenced by Echologics in the District of Delaware was dismissed the day before this suit was filed in the Southern District of California. (Def.'s Mem., at 1:17–19.) Orbis argues that judicial economy favors transfer because Judge Andrews and Magistrate Judge Thynge have already spent "considerable time" adjudicating a similar dispute for related patents." (*Id.* at 11:23–26.) However, as previously discussed herein, the Court does not find Orbis' arguments persuasive because the transcripts indicate Judge Andrews was more involved in the procedural aspects of the case rather than the merits. (*See*, Disc. Conf., at 3:13–21; Settlement Conf., at 11–12.) Additionally, Judge Andrews candidly acknowledged he would recuse himself should either party write him a letter requesting him to do so. (Settlement Conf., at 18:16–22.) Thus, the previous claims filed in Delaware do not provide a strong basis for transfer.

21cv1147

## b.   Forum Shopping

Orbis argues that Echologics is engaged in forum shopping because it recently litigated related patent infringement claims against Orbis in the District of Delaware.  (*Id.* at 1:2–4.)  Orbis cites to transcripts where the court in Delaware explained to Echologics that it would be an abuse of discovery to look at the alleged infringing product to identify whether other potential infringement claims could be brought against Orbis.  (Disc. Conf., at 15:17–21.)  Orbis contends that Echologics filed this claim in the Southern District of California to avoid 'unfavorable admissions" in the District of Delaware.  (*Id.* at 6:2–4.)  Echologics counters that it does not have motivations to avoid Judge Andrews in Delaware because he already offered to recuse himself from future litigation.  (Opp'n, at 16:4–6, 17:11–14.)  While this Court shares the defendant's concern that the Plaintiffs may in some degree be engaged in forum shopping—choosing to file a similarly related patent claim in a different district where Plaintiffs do not reside—Defendant has not met its burden in providing the Court with substantial evidence to conclude Plaintiffs' engaged in blatant forum shopping.

"[C]oncerns of forum-shopping are potentially present when a plaintiff pursues litigation outside his home district."  *LegalForce, Inc. v. Legalzoom.com, Inc.*, 2018 WL 6179319, at *3 (C.D. Cal. Nov. 27, 2018) (quoting *Mitchell v. Deutsche Bank Nat'l Tr. Cov.*, 2015 WL 12867746, at *3 (C.D. Cal. Oct 29, 2015).  "Forum shopping could reasonably be inferred if the plaintiff files the same or similar case represented by the same law firm in a different district after receiving unfavorable rulings there."  *LegalForce, Inc.* 2018 WL 6179319, at *3 (citing *Carrera v. First Am. Home Buyers Prot. Co.*, 2014 WL 13012698, at *6 (S.D. Cal. July 23, 2014); *Alexander v. Franklin Resources, Inc.*, 2007 WL 518859, at *4 (N.D. Cal. Feb 14, 2007).  "[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons—such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the

defendant resulting from litigation in that forum—the less deference the plaintiff's choice commands." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

Although Echologics chose to pursue litigation outside its home district, the Southern District of California is Defendant Orbis' home district, where it is headquartered. (Def.'s Mem., at 7:20.) Therefore, the Southern District is more convenient and less expensive for Orbis to litigate here. Further, the previous claims in Delaware did not receive unfavorable rulings since both parties agreed to voluntarily dismiss the case with prejudice. (*Id.* at 3: 7, 24–25.) Finally, patent law is applied consistently across federal courts, thus eliminating concerns that Echologics sought a tactical advantage in its choice of forum.

Orbis argues that the Delaware transcript of discussions with Judge Andrews is a matter of public record and therefore would not be grounds for recusal if Judge Andrews were assigned to this case on transfer. (*Id.* at 13:23–26.) However, even if the Court assumes Judge Andrews would not recuse himself, Orbis still has not met its burden to show that Echologics is engaged in blatant forum shopping for the same reasons already discussed herein. Thus, the interests of justice favor keeping this suit in the Southern District of California.

## IV. CONCLUSION

For the foregoing reasons, Defendant has not met its burden to show the balance of factors favors transfer pursuant to 28 U.S.C. § 1404(a). Accordingly, the Court **DENIES** Defendant's Motion to Transfer Venue.

**IT IS SO ORDERED.**

DATED: November 9, 2021

Hon. Cynthia Bashant
United States District Judge

- 19 -

21cv1147