1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

11

ECHOLOGICS, LLC, et al.,

12

Plaintiff,

13

v.

14

ORBIS INTELLIGENT SYSTEMS, INC.,

15

16

Defendant.

Case No.:  21-cv-01147-RBM-AHG

**ORDER:**

**(1) DENYING DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIMS; AND**

**(2) GRANTING DEFENDANT'S MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**

**[Doc. 82]**

17

18

19

20

21

22

On November 18, 2022, Defendant Orbis Intelligent Systems, Inc. ("Orbis") filed a

23

motion for leave to amend its answer and counterclaims and its final invalidity contentions.

24

(Doc. 82.)  On December 1, 2022, Plaintiffs Echologics, LLC, Mueller International, LLC

25

("Mueller International"), and Mueller Canada, Ltd. d/b/a Echologics ("Mueller Canada")

26

(collectively, "Plaintiffs" or "Echologics") filed a response in opposition to Orbis' motion.

27

(Doc. 85.)   On December 9, 2022, Orbis filed its reply.  (Doc. 87.)   For the reasons

28

discussed below, the Court grants in part and denies in part Orbis' motion.  Specifically,

1

1   the Court denies Orbis leave to amend its answer and counterclaims, and the Court grants

2   Orbis leave to amend its final invalidity contentions.

### I.       BACKGROUND

4      "Plaintiffs are indirect subsidiaries of Mueller Water Products, Inc. ('MWP'), a

5   public company with subsidiaries that are leading manufacturers of products and services

6   used in the transmission, distribution, and measurement of water."  (Doc. 1, Compl. ¶ 10.)

7   Echologics provides technologies, products, and services that can non-invasively detect

8   underground leaks and assess the condition of water mains.  (*Id*. ¶ 11.)  Orbis is a company

9   that has developed sensors that can be used to detect leaks in water pipes and defects in

10   pipe walls.  (Doc. 46 at 3.)

11      Mueller International is the owner via assignment of U.S. Patent No. 10,881,888

12   (filed Nov. 18, 2017) (issued Jan. 5, 2021) ("the '888 Patent").  (Doc. 1, Compl. ¶ 14.)  *See*

13   *also* '888 Patent, at [73].  In the present action, Echologics alleges that Orbis' design,

14   manufacture, testing, use, importation, sale, and/or offering for sale in the United States of

15   Orbis' nozzle cap products, specifically its Prodigy SmartCap product, directly infringe at

16   least claims 1, 2, 3, 5, and 7 of the '888 Patent.  (*Id*. ¶¶ 22, 27, 31-38.)

17      The '888 Patent is titled "Infrastructure Monitoring Devices, Systems, and

18   Methods," and "is directed to devices, systems, and methods related to monitoring and

19   controlling an infrastructure such as, but not limited to, the supply and use of commercial,

20   industrial or residential water, gas and/or electric utilities, and, in particular, to devices,

21   methods, and systems for monitoring and controlling a municipality and alerting a user to

22   potential faults and actions required."  '888 Patent at [54], col. 1 ll. 19-25.  In describing

23   the background of the invention, the '888 Patent explains that municipalities administer

24   and/or outsource numerous complex utility and safety systems, including water distribution

25   systems.  *See id*. at col. 1 ll. 29-35.  "Each of these systems needs to be monitored for use

26   (authorized or unauthorized), faults, tampering, events, interruptions or blockages, leaks,

27   contamination, and/or other issues."  *Id*. at col. 1 ll. 35-38.

28      The '888 Patent explains that typically, in order to obtain an understanding of the

1  state of any one system, personnel must check for problems within the system manually.

2  *Id*. at col. 1 ll. 39-42.  "This process is slow, is labor-intensive, and can lead to overlooked

3  problems.  Furthermore, preferred aspects of the system may be evaluated irregularly or

4  infrequently, thereby allowing a problem to go unchecked for long periods of time."  *Id*. at

5  col. 1 ll. 42-46.

6      The '888 Patent seeks to overcome the problems and disadvantages discussed above

7  by providing new systems and methods for monitoring municipality infrastructure.  *Id*. at

8  col. 2 ll. 11-14.  Specifically, the '888 Patent explains that in water infrastructure systems,

9      monitoring devices can be located throughout the system, for example, as
10      attachments to component parts, for feedback to a network that can provide
       real-time information to the utility operating the network.  The network
11      operators can use the information transmitted to activate controlling devices
       on the network, or to dispatch repair or other services as directed by the
12      information provided by the network.  For example, if water pressure monitors
13      on a water meter indicate a variance between locations, a water leak can be
       reported using the network, and controlling devices can divert water.
14
15  *Id*. at col. 4 ll. 49-60.

16      Independent claim 1 of the '888 Patent, the sole independent claim in the '888 patent

17  and the only independent claim asserted by Echologics in this action, claims:

18      1. An infrastructure monitoring assembly comprising:

19      a fire hydrant, the fire hydrant defining a nozzle, the nozzle defining external
       threading at a nozzle end of the nozzle;

20      a nozzle cap, the nozzle cap comprising a metallic material, the nozzle cap
21      defining a first nozzle cap end and a second nozzle cap end, a threaded bore
       extending into the nozzle cap from the second nozzle cap end to a bore
22      shoulder defined between the first nozzle cap end and the second nozzle cap
       end, the threaded bore engaging the external threading, a gasket contacting
23      the nozzle end and the bore shoulder in sealing engagement and sealing a
24      nozzle bore of the nozzle;

25      an antenna cover attached to the nozzle cap, the antenna cover comprising a
26      non-metallic material, the antenna cover defining a first antenna cover end
       and a second antenna cover end, the first antenna cover end defined opposite
27      from the second antenna cover end, the second antenna cover end positioned
28      between the first nozzle cap end and the bore shoulder of the nozzle cap, the

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

second antenna cover end positioned between the first antenna cover end and
the second nozzle cap end; and

an antenna covered by the antenna cover.

'888 Patent at col. 18 ll. 5-28.

On June 22, 2021, Echologics filed a complaint for patent infringement against Orbis, alleging infringement of the '888 Patent. (Doc. 1, Compl.)  On July 19, 2021, Orbis filed an answer to Echologics' complaint and counterclaims.  (Doc. 14.)  On November 8, 2021, the Court issued a scheduling order.  (Doc. 30.)

On November 9, 2021, the Court denied Orbis' motion to transfer venue. (Doc. 31.) On June 27, 2022, the Court issued a claim construction order, construing the disputed claim terms from the '888 Patent.  (Doc. 64.)

On November 17, 2022, the Court issued a first amended scheduling order.  (Doc. 79.)   Under the November 17, 2022 amended scheduling order, all outstanding fact discovery must be completed by December 11, 2022; expert discovery will close on February 3, 2023; the pre-trial motion cutoff deadline is set for February 13, 2023; a pretrial conference is scheduled for March 27, 2023; and a trial date is scheduled for May 23, 2023. (*Id.* at 1-2, 5.)

By the present motion, Orbis moves for leave to file an amended answer and counterclaims and to serve amended final invalidity contentions.  (Doc. 82-1 at 1.) Specifically, Orbis moves to amend its answer and counterclaims to assert a new affirmative defense and counterclaim for unenforceability of the '888 Patent due to patent misuse.  (*Id.*)  Orbis also moves to amend its invalidity contentions to assert two new theories of invalidity and to correct a clerical mistake.  (*Id.*)

## II.   DISCUSSION

### A.   Defendant's Motion to Amend Its Answer and Counterclaims

Orbis moves to amend its answer and counterclaims to assert a new affirmative defense and counterclaim for unenforceability of the '888 Patent due to patent misuse. (Doc. 82-1 at 1, 7, 10-15.)  Orbis concedes that the deadline to amend its pleadings passed

1    on August 30, 2021, but argues that "good cause" exists for it to amend its pleadings

2    because Orbis only discovered the factual basis for its claim of patent misuse via discovery

3    that occurred in October and November of 2022.  (*Id.* at 2, 10-11.)  In response, Echologics

4    argues that the Court should deny Orbis' motion for leave to amend because the proposed

5    affirmative defense and counterclaim for patent misuse is futile.  (Doc. 85 at 1, 6-11.)

6           i.      Legal Standard[1]

7           After a pretrial scheduling order has been issued pursuant to Federal Rule of Civil

8    Procedure 16, the district court must first apply Rule 16's standard for amending the

9    scheduling order if the deadline to amend the pleadings has passed.  *See Johnson v.*

10   *Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992); *Turrey v. Vervent, Inc.*,

11   No. 20-CV-0697 DMS (AHG), 2021 WL 5042120, at *1 (S.D. Cal. Oct. 28, 2021); *Jackson*

12   *v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999) ("[A] motion seeking to amend

13   pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a).").  Rule

14   16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's

15   consent."  Fed. R. Civ. P. 16(b)(4).  "'Good cause' is a non-rigorous standard that has been

16   construed broadly."  *Turrey*, 2021 WL 5042120, at *1 (citing *Ahanchian v. Xenon Pictures,*

17   *Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010)).  "'Rule 16(b)'s "good cause" standard primarily

18   considers the diligence of the party seeking the amendment.'"  *In re W. States Wholesale*

19   *Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v.*

20   *Learjet, Inc.*, 575 U.S. 373 (2015) (quoting *Johnson*, 975 F.2d at 609).  The focus of the

21   Rule 16(b) inquiry is upon the moving party's reasons for seeking modification of the

22   scheduling order; if the party was not diligent, the inquiry should end.  *Id.* at 737; *Johnson*,

23   975 F.2d at 609.

24

25   _____

26   [1] In an action for patent infringement, a motion for leave to amend a pleading under Federal
     Rule of Civil Procedure 15(a) "is a procedural matter . . . governed by the law of the

27   regional circuit."  *Pressure Prod. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308,
     1315 (Fed. Cir. 2010) (citing *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac*

28   *Solutions, P.C.*, 482 F.3d 1347, 1357 (Fed. Cir. 2007)).

If the party can satisfy the good cause standard of Rule 16(b), the district court must then determine if the party can satisfy the Rule 15(a) standard for leave to amend. *See Turrey*, 2021 WL 5042120, at \*1. Federal Rule of Civil Procedure 15(a) provides that once a responsive pleading is served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The Ninth Circuit has instructed that this policy is "'to be applied with extreme liberality.'" *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)). The decision whether to grant leave to amend "is entrusted to the sound discretion of the trial court." *Pisciotta v. Teledyne Indus.*, 91 F.3d 1326, 1331 (9th Cir. 1996). When exercising its discretion, "a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).

When determining whether to grant leave to amend, courts generally consider five factors, known as the *Foman* factors as stated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962). These factors include: (1) undue delay; (2) bad faith on the part of the party seeking leave to amend; (3) undue prejudice to the non-moving party; (4) futility of amendment; and (5) whether the plaintiff has previously amended the complaint. *Foman*, 371 U.S. at 182; *see Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052.

ii.    Futility of Amendment

"'Futility of amendment can, by itself, justify the denial of a motion for leave to amend.'" *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). "'[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute

6

1    a valid and sufficient claim or defense.'"  *Sweaney v. Ada Cty., Idaho*, 119 F.3d 1385, 1393

2    (9th Cir. 1997) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988));

3    *accord Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018).  In other

4    words, "[a] proposed amended [pleading] is futile if it would be immediately 'subject to

5    dismissal.'  Thus, the 'proper test to be applied when determining the legal sufficiency of

6    a proposed amendment is identical to the one used when considering the sufficiency of a

7    pleading challenged under Rule 12(b)(6).'"  *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th

8    Cir. 2011), *on reh'g en banc*, 681 F.3d 1041 (9th Cir. 2012) (citations omitted); *see Miller*,

9    845 F.2d at 214; *May v. Northrop Grumman Sys. Corp.*, 680 F. App'x 556, 559 (9th Cir.

10   2017).

11          Pursuant to Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed

12   for failure to allege "enough facts to state a claim to relief that is plausible on its face."

13   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

14   when the plaintiff pleads factual content that allows the court to draw the reasonable

15   inference that the defendant is liable for the misconduct alleged.  The plausibility standard

16   is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

17   a defendant acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

18   citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "'accept[s]

19   all factual allegations in the [pleading] as true and construe[s] the pleadings in the light

20   most favorable to the nonmoving party.'"  *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107,

21   1114 (9th Cir. 2021).

22          Here, the claim at issue is an affirmative defense and counterclaim for

23   unenforceability due to patent misuse. (Doc. 82-3, Ex. A, Proposed Amended Affirmative

24   Defenses ¶¶ 9-20, Proposed Amended Counterclaims ¶¶ 17-21.)  The doctrine of "[p]atent

25   misuse is an affirmative defense to patent infringement and an 'accused infringer may

26   invoke the doctrine of patent misuse to defeat the patentee's claim.'"  *Finjan, Inc. v. ESET,*

27   *LLC*, No. 17-CV-00183-CAB-BGS, 2017 WL 4358128, at *3 (S.D. Cal. Oct. 2, 2017)

28   (quoting *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (en

banc)); *see Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997) ("Patent misuse is an affirmative defense to an accusation of patent infringement.").  The doctrine of patent misuse is "grounded in the policy-based desire to 'prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right.'" *Princo*, 616 F.3d at 1328 (quoting *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed. Cir. 1992), *abrogated by Impression Prod., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360 (2017)).  "[T]he key inquiry under the patent misuse doctrine is whether, by imposing the condition in question, the patentee has impermissibly broadened the physical or temporal scope of the patent grant and has done so in a manner that has anticompetitive effects." *Id.*; *see Virginia Panel*, 133 F.3d at 868.  "[T]he basic rule of patent misuse [is] that the patentee may exploit his patent but may not 'use it to acquire a monopoly not embraced in the patent.'"  *Princo*, 616 F.3d at 1327 (quoting *Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 643 (1947)).

"[T]he Federal Circuit has emphasized the 'narrow scope of the doctrine' and clarified that even otherwise unlawful anticompetitive conduct does not establish patent misuse 'unless the conduct in question restricts the use of that patent and does so in one of the specific ways that have been held to be outside the otherwise broad scope of the patent grant.'" *Finjan*, 2017 WL 4358128, at *3 (quoting *Princo*, 616 F.3d at 1329).  "Where the patentee has not leveraged its patent beyond the scope of rights granted by the Patent Act, misuse has not been found." *Princo*, 616 F.3d at 1328.

In order to state a claim for patent misuse, Orbis must allege that Echologics "impermissibly broadened the physical or temporal scope" of its patent grant. *See Princo*, 616 F.3d at 1328; *Virginia Panel*, 133 F.3d at 868; *Finjan*, 2017 WL 4358128, at *4; *see also Duke Univ., Allergan, Inc. v. Akorn, Inc.*, No. 318CV14035BRMTJB, 2019 WL 4410284, at *12 (D.N.J. Sept. 16, 2019) ("Where a litigant fails to plead specifics as to how a defendant in a patent misuse action impermissibly broadened the physical or temporal scope of the patent, the patent misuse claim cannot withstand a motion to dismiss." (citing *Otsuka Pharm. Co. v. Torrent Pharm. Ltd., Inc.*, 118 F. Supp. 3d 646, 659

8

1    (D.N.J. 2015))).  In its proposed amended answer and counterclaims, Orbis alleges that

2    Echologics' conduct has had the effect of "broadening the temporal scope of their patent

3    grant with anticompetitive effect."  (Doc. 82-3, Ex. A, Proposed Amended Affirmative

4    Defenses ¶ 19.)

5           To provide factual support for its "broadening [of] temporal scope" allegation, Orbis

6    alleges the following additional facts in its proposed amended answer and counterclaims.

7    Orbis alleges that the statutory term for the '888 Patent – the patent-in-suit – is through

8    May 5, 2031; the statutory term for U.S. Patent No. 10,386,257 ("the '257 Patent") is

9    through June 8, 2032; and the statutory term for U.S. Patent No. 10,305,178 ("the '178

10   Patent") is through September 2, 2036.[2]    (Doc. 82-3, Ex. A, Proposed Amended

11   Affirmative Defenses ¶¶ 11, 13, 15.)  Orbis further alleges:

12   
13
> The purported inventions of each of the '888, '257, and '178 patents are indistinguishable.  According to the claims, each of these patents is to the same invention.

14
15
16
> [B]y pursuing three applications predicated upon independent initial filings, Plaintiffs have illicitly extended by approximately six years the term during which they can assert the exclusive rights afforded by a patent on that invention.

17
> . . .

18
19
20
> Plaintiffs['] conduct has had the effect of impermissibly extended[*sic*] the limited protected[*sic*] from competition by the patent by broadening the temporal scope of their patent grant with anticompetitive effect, and have thereby committed patent misuse.

21   (*Id.* ¶¶ 16, 17, 19.)

22          These factual allegations are insufficient to state a claim for patent misuse under the

23   circumstances alleged by Orbis.  In order for a patent misuse claim to be valid, "'[t]he

24   misuse must be of the patent in suit.'"  *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, No.

25

26   _____

27   [2] Plaintiff Mueller International is the listed owner via assignment of the '257 Patent and
     the '178 Patent.  *See* U.S. Patent No. 10,386,257, at [73] (issued Aug. 20, 2019); U.S.
28   Patent No. 10,305,178, at [73] (issued May 28, 2019).

1  1:13-CV-00740 AJT, 2013 WL 6682981, at *9 (E.D. Va. Dec. 18, 2013) (quoting *Princo*,

2  616 F.3d at 1329; *Kolene Corp. v. Motor City Metal Treating, Inc.*, 440 F.2d 77, 84 (6th

3  Cir. 1971)); *see Princo*, 616 F.3d at 1331 (Patent misuse "requires, at minimum, . . . that

4  the patent in suit must 'itself significantly contribute[] to the practice under attack.'").

5  Here, the patent-in-suit is the '888 Patent.  (*See* Doc. 1, Compl. ¶ 1.)  Under Orbis' own

6  allegations, the '888 Patent is the patent with the shortest remaining statutory term out of

7  the three patents referenced in the proposed amended answer and counterclaims.  (*See* Doc.

8  82-3, Ex. A, Proposed Amended Affirmative Defenses ¶¶ 11, 13, 15.)  Orbis fails to

9  adequately explain how it is plausible that Echologics has impermissibly "broaden[ed] the

10  temporal scope of [its] patent grant" by bringing an action for infringement of the patent

11  with the shortest remaining statutory term and only that patent.  Because Echologics only

12  asserts infringement of the '888 Patent and that patent has a specific statutory term that

13  expires before the other two patents mentioned in the proposed answer and counterclaims,

14  Echologics's assertion of the '888 Patent in this action cannot constitute an impermissible

15  broadening of the temporal scope of its patent grant as to the '888 Patent as a matter of

16  law.  *Cf. C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998) ("It is not

17  patent misuse to bring suit to enforce patent rights not fraudulently obtained.")

18        Orbis may allege that the longer remaining statutory terms for the '257 Patent and

19  the '178 Patent compared to the remaining statutory term for the '888 Patent impermissibly

20  broaden the temporal scope of Plaintiffs' patent grant as to those two patents.  But the '257

21  Patent and the '178 Patent are not at issue in this action; they are not patents-in-suit.

22  "'[T]he misuse must be of the patent in suit.'"  *Intell. Ventures I*, 2013 WL 6682981, at *9

23  (quoting *Princo*, 616 F.3d at 1329; *Kolene*, 440 F.2d at 84).  Therefore, Orbis cannot rely

24  on misuse allegations related to non-asserted patents as the basis for its claim of patent

25  misuse in this case.  Further, in the proposed amended answer and counterclaims, Orbis

26  admits that the '257 Patent and the '178 Patent were the subject of a prior action between

27  the same parties as this action:  *Echologics, LLC, v. Orbis Intelligent Systems, Inc.*, No.

28

1:19-cv-2036-RGA (D. Del., filed Oct. 28, 2019) ("the Delaware action").[3]   (Doc. 82-3, Ex. A, Proposed Amended Answer ¶ 17; *see also* Doc. 18-1 at 2-3; Doc. 82-3 at 1-2.)  Orbis further admits that the Delaware action was dismissed on June 21, 2021, and that Echologics' infringement claims as to the '178 patent and the '257 patent against Orbis were dismissed with prejudice.  (Doc. 82-3, Ex. A, Proposed Amended Answer ¶ 19; *see also* Doc. 82-3 at 2; Doc. 19-7, Ex. 6.)  This is significant because to the extent Orbis is contending that Plaintiffs' prior assertion of the '178 Patent and the '257 Patent against it constitutes patent misuse based on an impermissibly broadened temporal scope as to those two patents, "such misuse has now been purged by [Echologic's] dismissal with prejudice" of its infringement claims as to the '178 Patent and the '257 Patent against Orbis.  *Princeton Digital Image Corp. v. Off. Depot Inc.*, No. CV 13-239, 2016 WL 1533697, at *8 (D. Del. Mar. 31, 2016); *see Nationwide Sales & Servs. Inc. v. Steel City Vacuum Co.*, No. 16CV06223DRHST, 2021 WL 982867, at *4 (E.D.N.Y. Feb. 16, 2021), *report and recommendation adopted by* No. 216CV6223DRHST, 2021 WL 980872 (E.D.N.Y. Mar. 16, 2021) (concluding that "any alleged misuse has already been purged" because the court granted summary judgment on plaintiff's patent infringement claims in favor of defendant); *see also Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1025 (Fed. Cir. 2008) ("[T]he successful assertion of patent misuse may render a patent unenforceable until the misconduct can be purged; it does not render the patent unenforceable for all time."); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998) ("[A] holding of misuse renders the patent unenforceable until the misuse is purged; it does not, of itself, invalidate

---

[3] In addition, pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the Delaware action, and the dismissal with prejudice in that action.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (explaining that a court may take judicial notice of matters of public record under Federal Rule of Evidence 201 "without converting a motion to dismiss into a motion for summary judgment"); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (explaining that courts "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue'").

21-cv-01147-RBM-AHG

the patent.").  In sum, Orbis' proposed affirmative defense and counterclaim for patent misuse is deficient as a matter of law under the factual circumstances alleged in Orbis' proposed amended answer and counterclaims.

In an effort to sustain its claim for patent misuse, in its reply brief, Orbis contends that its patent misuse claim is based in part on its allegations that Echologics has engaged "in anticompetitive behavior to make it cost prohibitive for Orbis to participate in the market and using such lawsuits to dissuade customers and potential customers from purchasing Orbis' products, including those not accused of infringement." (Doc. 87 at 3; *see also id.* at 1, 5.) The problem with this argument is that Orbis does not allege this anywhere in its proposed amended answer and counterclaims.  Orbis' proposed amended answer and counterclaims do not contain any allegations asserting that Echologics has dissuaded customers from purchasing non-accused products.  (*See generally* Doc. 82-3, Ex. A, Proposed Amended Affirmative Defenses ¶¶ 9-20, Proposed Amended Counterclaims ¶¶ 17-21.)

In sum, Orbis has failed to adequately state a claim for unenforceability due to patent misuse against Echologics in its proposed amended answer and counterclaims.  As such, Orbis' proposed affirmative defense and counterclaim for patent misuse is futile, and the Court denies Orbis' motion for leave to amend its answer and counterclaims on that basis. *See Kroessler*, 977 F.3d at 815 ("'Futility of amendment can, by itself, justify the denial of a motion for leave to amend.'").

**B.      Defendant's Motion to Amend Its Invalidity Contentions**

Orbis moves to amend its invalidity contentions pursuant to Patent Local Rule 3.6(b)(3). (Doc. 82-1 at 1, 7-10.)  Specifically, Orbis requests to amend its invalidity contentions, so that it may assert: (1) a new theory of invalidity based on the on-sale bar under 35 U.S.C. § 102(b) (pre-AIA); and (2) a new theory of invalidity based on lack of

12

written description under 35 U.S.C. § 112 ¶ 1 (pre-AIA).[4]  (*Id.* at 7-8.)  In addition, Orbis moves to amend its final invalidity contentions to correct a clerical mistake.[5]  (*Id.* at 1 n.2.)

       1.     <u>Legal Standard</u>

      "'The Court's Patent Local Rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'"  *CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17-CV-02479-GPC-DEB, 2022 WL 16985003, at *12 (S.D. Cal. Nov. 15, 2022) (quoting *Wi-LAN Inc. v. LG Elecs., Inc.*, No. 18-CV-01577-H-BGS, 2019 WL 5790999, at *2 (S.D. Cal. Sept. 18, 2019)); *accord O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006).  The Rules "'are also designed to provide structure to discovery and to enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute.'"  *Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, 411 F. Supp. 3d 975, 981 (N.D. Cal. 2019) (quoting *Golden Bridge Tech. Inc v. Apple, Inc.*, No. 5:12-CV-04882-PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014)).  The Patent Local Rules accomplish this "by requiring both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery.  The rules thus seek to balance the right to develop new information in discovery

---

[4] Congress amended 35 U.S.C. §§ 102 and 112 when it enacted the Leahy–Smith America Invents Act ("AIA").  *Junker v. Med. Components, Inc.*, 25 F.4th 1027, 1029 n.1 (Fed. Cir. 2022); *In re Durance*, 891 F.3d 991, 1002 n.9 (Fed. Cir. 2018).  "However, the amended version of § 112 applies only to patent applications 'filed on or after' September 16, 2012."  *Durance*, 891 F.3d at 1002 n.9.  And the amended version of § 102 does not apply to patent applications "filed before March 16, 2013."  *Junker*, 25 F.4th at 1029 n.1.  Here, Orbis contends that the pre-AIA versions of § 102 and § 112 apply to the '888 Patent.  (*See* Doc. 82-1 at 1 n.2.)

[5] In its motion, Orbis explains that each of the claim charts in its final invalidity contentions has a header that incorrectly cites to the current versions of 35 U.S.C. §§ 102 and 103.  (Doc. 82-1 at 1 n.2.)  Orbis requests to amend its final invalidity contentions to change the headers to correctly cite to the pre-AIA versions of 35 U.S.C. §§ 102 and 103.  (<u>Id.</u>)

13

1   with the need for certainty as to the legal theories." *O2 Micro*, 467 F.3d at 1365–66. "'A

2   district court has wide discretion in enforcing the Patent Local Rules.'" *CliniComp*, 2022

3   WL 16985003, at \*12; *see Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312,

4   1320 (Fed. Cir. 2016) (reviewing "a district court's application of its local rules for abuse

5   of discretion").

6         Under Patent Local Rule 3.3, an accused infringer must serve on all parties its

7   "Invalidity Contentions," and those contentions must disclose specific information

8   regarding the accused infringer's theories of invalidity in the case. *See* S.D. Cal. Pat. L.R.

9   3-3. In a lawsuit for patent infringement in the Southern District of California, an accused

10   infringer is limited to the invalidity theories and prior art references it sets forth in its

11   invalidity contentions. *Multimedia Pat. Tr. v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012

12   WL 12868264, at \*3 (S.D. Cal. Nov. 20, 2012); *see Verinata Health, Inc. v. Sequenom,*

13   *Inc.*, No. C 12-00865 SI, 2014 WL 4100638, at \*3 (N.D. Cal. Aug. 20, 2014) ("'Any

14   invalidity theories not disclosed pursuant to Local Rule 3–3 are barred . . . from

15   presentation at trial (whether through expert opinion testimony or otherwise).'").

16         The Court's Patent Local Rules "do not allow amendments to contentions 'as a

17   matter of course when new information is revealed in discovery.'" *Zest IP Holdings, LLC*

18   *v. Implant Direct MFG, LLC*, No. 10CV0541-GPC-WVG, 2014 WL 358430, at \*3 (S.D.

19   Cal. Jan. 31, 2014). Rather, a party seeking to amend its infringement or invalidity

20   contentions must satisfy the relevant provisions set forth in Patent Local Rule 3.6. *See id.*;

21   *InfoGation Corp. v. ZTE Corp.*, No. 16-CV-01901-H-JLB, 2017 WL 11420583, at \*2 &

22   n.2 (S.D. Cal. June 7, 2017); *see also Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014,

23   1017 (Fed. Cir. 2019) ("Infringement contentions may only be amended by order of the

24   district court upon a timely showing of good cause."). "In contrast to the more liberal

25   policy for amending pleadings, the philosophy behind amending contentions under the

26   Patent Local Rules is decidedly conservative, and designed to prevent the 'shifting sands'

27   approach to claim construction." *Regents of Univ. of California v. Affymetrix, Inc.*, No.

28   17-CV-01394-H-NLS, 2018 WL 4053318, at \*2 (S.D. Cal. Aug. 24, 2018) (internal

quotation marks omitted) (quoting *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1113 (N.D. Cal. 2017)); *accord Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002).

Patent Local Rule 3.6(b) provides:

As a matter of right, a party opposing a claim of patent infringement may serve "Amended Invalidity Contentions" no later than the completion of claim construction discovery.  Thereafter, absent undue prejudice to the opposing party, a party opposing infringement may only amend its validity contentions:

. . .

3. Upon a timely motion showing good cause.

The moving party bears the burden of demonstrating "good cause" under Patent Local Rule 3.6(b)(3).  *O2 Micro*, 467 F.3d at 1366; *Multimedia Pat. Tr. v. Apple Inc.*, No. 10-CV-2618-H KSC, 2012 WL 4547449, at *2 (S.D. Cal. Sept. 28, 2012).  To establish "good cause," "the moving party must demonstrate that it 'has acted diligently and the opposing party will not be prejudiced.'"  *Regents of Univ. of California*, 2018 WL 4053318, at *2 (quoting *Verinata*, 236 F. Supp. 3d at 1113); *see Google LLC v. Sonos, Inc.*, No. 20CV03845EMCTSH, 2021 WL 4061718, at *4 (N.D. Cal. Sept. 7, 2021) ("'The good cause inquiry is two-fold: (1) whether the moving party was diligent in amending its contentions; and (2) whether the non-moving party would suffer prejudice if the motion to amend were granted.'")  "'[T]he diligence required for a showing of good cause has two subparts: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered.'"  *Regents of Univ. of California*, 2018 WL 4053318, at *2 (quoting *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS (JSC), 2016 WL 2855260, at *3 (N.D. Cal. May 13, 2016)); *accord Evolusion Concepts, Inc. v. Juggernaut Tactical, Inc.*, No. 818CV01378JLSDFM, 2020 WL 5898974, at *3 (C.D. Cal. July 9, 2020).  "However, good cause 'does not require perfect diligence.'"  *In re Koninklijke Philips Pat. Litig.*, No. 18-CV-01885-HSG, 2019 WL 2359206, at *2 (N.D. Cal. June 4, 2019); *accord Evolusion*, 2020 WL 5898974, at *3.

"Further, even if the moving party establishes diligence, the Court should then

1 consider prejudice to the non-moving party in determining whether leave to amend should

2 be granted." *InfoGation*, 2017 WL 11420583, at *2. "[I]n the context of a motion for leave

3 to amend contentions, '[p]rejudice is typically found when amending contentions stand to

4 disrupt the case schedule or other court orders.'" *Regents of Univ. of California*, 2018 WL

5 4053318, at *2 (quoting *Karl Storz*, at *3); see *Google*, 2021 WL 4061718, at *6

6 ("Prejudice is typically found when the movant seeks to amend late in a case's pre-trial

7 schedule or when amendment would disrupt a previous motion or order."). "In considering

8 good cause, courts also examine other factors including 'the relevance of the newly

9 discovered prior art, the difficulty in obtaining such prior art, and whether the motion

10 appears to be motivated by gamesmanship.'" *Karl Storz*, 2016 WL 2855260, at *3; *accord*

11 *Evolusion*, 2020 WL 5898974, at *3.

12     2.   <u>Analysis</u>

13     Here, Orbis has demonstrated that it has acted diligently in seeking to amend its

14 invalidity contentions to assert its two new theories of invalidity.  In its motion, Orbis

15 details the various discovery it has performed in this action in an effort to reveal potential

16 theories of invalidity.  (*See* Doc. 82-1 at 2-, 157.)  Further, Orbis explains that it only

17 recently discovered the underlying facts that form the basis for its two new theories of

18 invalidity.  Specifically, Orbis explains that its new on-sale bar theory of invalidity is based

19 on facts revealed during the deposition of Mr. Keefe that took place on October 21, 2022.

20 (*Id.* at 6-8.)  And Orbis' new lack of written description theory of invalidity is based on

21 facts revealed during the deposition of Mr. Gibson that took place on October 12, 2022.

22 (*Id.* at 5, 8.)   Orbis filed the present motion for leave to amend its final invalidity

23 contentions on November 18, 2022 – only five weeks after Mr. Gibson's deposition and

24 only four weeks after Mr. Keefe's deposition.  As such, because Orbis sought leave to

25 amend its invalidity contentions within five weeks of discovering the facts underlying its

26 two new theories of invalidity, Orbis has demonstrated that it has acted diligently in seeking

27 to amend its contentions. *See, e.g.*, *Regents of Univ. of California*, 2018 WL 4053318, at

28 *3 (finding moving party diligent where the party moved for leave to amend its contentions

1   within two months of discovering the relevant facts).

2   Further, Orbis has demonstrated that Echologics will not be prejudiced by its

3   proposed amendments to its final invalidity contentions.  Neither party suggests that the

4   proposed amendments will require any alterations to the Court's scheduling order in this

5   action.  "'Courts have found no prejudice where, as here, the proposed amendments did

6   not pose a risk to discovery and motion deadlines or the trial schedule.'"  *Regents of Univ.*

7   *of California*, 2018 WL 4053318, at *3 (quoting *Karl Storz*, 2016 WL 2855260, at *7);

8   *accord Google*, 2021 WL 4061718, at *6.

9   In response to Orbis' motion for leave to amend its final invalidity contentions,

10   Echologics does not challenge Orbis' diligence or contend that it will be prejudiced by the

11   amendments.  Rather, Echologics challenges the sufficiency of the evidence underlying

12   Orbis' new theories of invalidity.  (*See* Doc. 85 at 11-12 ("[T]he new information on which

13   Orbis bases its proposed amendments do not support a finding of invalidity and are

14   irrelevant.").)  In evaluating whether an accused infringer has demonstrated "good cause"

15   to amend its invalidity contentions under Patent Local Rule 3.6(b)(3), district courts

16   consider the diligence of the moving party and the prejudice to the non-moving party.  *See*

17   *Regents of Univ. of California*, 2018 WL 4053318, at *2; *InfoGation*, 2017 WL 11420583,

18   at *2; *Multimedia Pat. Tr.*, 2012 WL 4547449, at *2; *Google*, 2021 WL 4061718, at *4.

19   District courts do not consider the sufficiency of the evidence supporting the proposed new

20   theories of invalidity, and Echologics has not provided the Court with any case law to the

21   contrary.[6]  As such, the Court rejects Echologics' challenges to factual sufficiency of

22

23

---

24   [6] Echologics notes that "the relevance of the newly discovered prior art" may be considered
25   during a "good cause" determination. (Doc. 85 at 11.) The Court agrees that "the relevance
   of the newly discovered prior art" is a factor that a court may examine when evaluating
   "good cause" under Patent Local Rule 3.6(b)(3). *See Evolusion*, 2020 WL 5898974, at *3;
26   *Karl Storz*, 2016 WL 2855260, at *3. This factor comes from the district court decision in
   *Yodlee, Inc. v. CashEdge, Inc.*, No. C05-01550 SI, 2007 WL 1454259, at *2 (N.D. Cal.
27   May 17, 2007). In *Yodlee*, the district court examined the relevance of the newly
28   discovered prior art in comparison to the prior art that was already currently cited in the

Orbis' new theories of invalidity at this stage in the proceedings.[7]

In sum, Orbis has demonstrated "good cause" under Patent Local Rule 3.6(b)(3) to amend its final invalidity contentions.  Accordingly, the Court grants Orbis' motion for leave to amend its final invalidity contentions.

### III.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Orbis' motion for leave to amend.  Specifically, the Court **DENIES** Orbis leave to file its proposed amended answer and counterclaims, and the Court **GRANTS** Orbis leave to serve its proposed amended final invalidity contentions.  Orbis is **ORDERED** to serve its amended final invalidity contentions (Doc. 82-5) no later than **fourteen (14) days** from the date this order is filed.

**IT IS SO ORDERED.**

DATE:  December 15, 2022

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

_____

movant's final invalidity contentions.  *See id.* at 2 ("According to [defendant], the newly discovered prior art is more material than 'any one of the dozens of prior art references discussed in [defendant]'s Final Invalidity Contentions.'").  The district court did not engage in an analysis of the sufficiency of evidence supporting the proposed new theory of invalidity.  *See id.*  As such, the cited case law does not provide support for Echologics' contention that the Court may examine the factual sufficiency of Orbis' proposed new theories of invalidity in determining whether to grant Orbis leave to amend its final invalidity contentions.

[7] The Court notes that its denial of Echologics' challenges is without prejudice to Echologics challenging the sufficiency of the evidence supporting Orbis' on sale bar theory of invalidity and lack of written description theory of invalidity at a later stage in the proceedings, such as through a motion for summary judgment.