1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECHOLOGICS, LLC; MUELLER INTERNATIONAL, LLC; and MUELLER CANADA, LTD., d/b/a Echologics,<br><br>                              Plaintiffs,<br><br>v.<br><br>ORBIS INTELLIGENT SYSTEMS, INC.,<br><br>                              Defendant. | Case No.: 21-cv-01147-H-AHG<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; AND**<br><br>[Doc. No. 101.]<br><br>**(2) DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Doc. No. 103.] |

On February 13, 2023, Plaintiffs Echologics, LLC, Mueller International, LLC, and Mueller Canada, Ltd. (collectively "Echologics") filed a motion for partial summary judgment of infringement. (Doc. No. 101.) On February 13, 2023, Defendant Orbis Intelligent Systems, Inc. ("Orbis") filed a motion for partial summary judgment as to the asserted claims' priority date. (Doc. No. 103.) On March 3, 2023, the parties filed their respective responses in opposition to the motions for summary judgment. (Doc. Nos. 116, 120.) On March 10, 2023, the parties filed their respective replies. (Doc. Nos. 128, 129.)

The Court held a hearing on the matter on March 27, 2023.  Coby Nixon appeared for Echologics.  Dario A. Machleidt, Benjamin M. Kleinman, and Kathleen R. Geyer appeared for Orbis.  For the reasons below, the Court denies the parties' motions for summary judgment.

### Background

"Plaintiffs are indirect subsidiaries of Mueller Water Products, Inc. ('MWP'), a public company with subsidiaries that are leading manufacturers of products and services used in the transmission, distribution, and measurement of water."  (Doc. No. 1, Compl. ¶ 10.)  Echologics provides technologies, products, and services that can non-invasively detect underground leaks and assess the condition of water mains.  (Id. ¶ 11.)  Orbis is a company that has developed sensors that can be used to detect leaks in water pipes and defects in pipe walls.  (Doc. No. 46 at 3.)

Mueller International is the owner via assignment of U.S. Patent No. 10,881,888 ("the '888 Patent").  U.S. Patent No. 10,881,888, at [73] (issued Jan. 5, 2021).  In the present action, Echologics alleges that Orbis's design, manufacture, testing, use, importation, sale, and/or offering for sale in the United States of Orbis's nozzle cap products, specifically its Prodigy SmartCap product, directly infringe at least claims 1, 2, 3, 5, and 7 of the '888 Patent.  (Doc. No. 1, Compl. ¶¶ 22, 27, 31-38.)

The '888 Patent is titled "Infrastructure Monitoring Devices, Systems, and Methods," and "is directed to devices, systems, and methods related to monitoring and controlling an infrastructure such as, but not limited to, the supply and use of commercial, industrial or residential water, gas and/or electric utilities, and, in particular, to devices, methods, and systems for monitoring and controlling a municipality and alerting a user to potential faults and actions required."  '888 Patent at [54], col. 1 ll. 19-25.  In describing the background of the invention, the '888 Patent explains that municipalities administer and/or outsource numerous complex utility and safety systems, including water distribution systems.  See id. at col. 1 ll. 29-35.  "Each of these systems needs to be monitored for use (authorized or unauthorized), faults, tampering, events, interruptions or blockages, leaks,

1   contamination, and/or other issues." <u>Id.</u> at col. 1 ll. 35-38.

2       The '888 Patent explains that typically, in order to obtain an understanding of the

3   state of any one system, personnel must check for problems within the system manually.

4   <u>Id.</u> at col. 1 ll. 39-42. "This process is slow, is labor-intensive, and can lead to overlooked

5   problems. Furthermore, preferred aspects of the system may be evaluated irregularly or

6   infrequently, thereby allowing a problem to go unchecked for long periods of time." <u>Id.</u> at

7   col. 1 ll. 42-46.

8       The '888 Patent seeks to overcome the problems and disadvantages discussed above

9   by providing new systems and methods for monitoring municipality infrastructure. <u>Id.</u> at

10  col. 2 ll. 11-14. Specifically, the '888 Patent explains that in water infrastructure systems,

> monitoring devices can be located throughout the system, for example, as
> attachments to component parts, for feedback to a network that can provide
> real-time information to the utility operating the network. The network
> operators can use the information transmitted to activate controlling devices
> on the network, or to dispatch repair or other services as directed by the
> information provided by the network. For example, if water pressure monitors
> on a water meter indicate a variance between locations, a water leak can be
> reported using the network, and controlling devices can divert water.

<u>Id.</u> at col. 4 ll. 49-60.

    Independent claim 1 of the '888 Patent, the sole independent claim in the '888 patent

and the only independent claim asserted by Echologics in this action, claims:

> 1. An infrastructure monitoring assembly comprising:
>
> a fire hydrant, the fire hydrant defining a nozzle, the nozzle defining external
> threading at a nozzle end of the nozzle;
>
> a nozzle cap, the nozzle cap comprising a metallic material, the nozzle cap
> defining a first nozzle cap end and a second nozzle cap end, a threaded bore
> extending into the nozzle cap from the second nozzle cap end to a bore
> shoulder defined between the first nozzle cap end and the second nozzle cap
> end, the threaded bore engaging the external threading, a gasket contacting
> the nozzle end and the bore shoulder in sealing engagement and sealing a
> nozzle bore of the nozzle;
>
> an antenna cover attached to the nozzle cap, the antenna cover comprising a
> non-metallic material, the antenna cover defining a first antenna cover end

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and a second antenna cover end, the first antenna cover end defined opposite from the second antenna cover end, the second antenna cover end positioned between the first nozzle cap end and the bore shoulder of the nozzle cap, the second antenna cover end positioned between the first antenna cover end and the second nozzle cap end; and

an antenna covered by the antenna cover.

'888 Patent col. 18 ll. 5-28.

On June 22, 2021, Echologics filed a complaint for patent infringement against Orbis, alleging infringement of the '888 Patent. (Doc. No. 1, Compl.)  On July 19, 2021, Orbis filed an answer to Echologics's complaint and counterclaims. (Doc. No. 14.)  On November 8, 2021, the Court issued a scheduling order. (Doc. No. 30.)

On November 9, 2021, the Court denied Orbis's motion to transfer venue. (Doc. No. 31.)  On June 27, 2022, the Court issued a claim construction order, construing the disputed claim terms from the '888 Patent. (Doc. No. 64.)  On November 17, 2022, the Court issued a first amended scheduling order. (Doc. No. 79.)  On January 10, 2023, the Court issued a second amended scheduling order. (Doc. No. 94.)

By the present motions, the parties move for partial summary judgment on certain issues. Specifically, Echologics argues that it is entitled to summary judgment that Orbis directly infringes claims 1 and 7 of the '888 Patent. (Doc. No. 108 at 1, 13.)  And Orbis seeks summary judgment that claim 1 of the '888 Patent and all of its dependent claims are entitled to a priority date of no earlier than November 18, 2017. (Doc. No. 103-1 at 1.)

## Discussion

### I.    Legal Standards Governing Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Material facts are facts that, under the governing substantive law, may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient

4

evidence for a reasonable jury to return a verdict for the non-moving party. Id. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of demonstrating that there is no genuine dispute as to any material fact. Celotex, 477 U.S. at 323.  A moving party without the ultimate burden of proof at trial can satisfy its burden in two ways: (1) by presenting "evidence negating an essential element of the nonmoving party's claim or defense;" or (2) by demonstrating "that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party establishes the absence of a genuine dispute as to any material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007).  To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings.").  Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256.

When ruling on a motion for summary judgment, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 378 (2007).  The court should not weigh the evidence or make credibility determinations.  See Anderson, 477 U.S. at 255.  "The evidence of the non-movant is to be believed." Id.  Further, the court may consider other materials in the record not cited to by the parties, but it is not required to do so.  See Fed. R. Civ. P. 56(c)(3); see also Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010) ("[A] district court has no independent duty 'to scour the record in search of a genuine issue of triable fact.'").

## II.    Plaintiffs' Motion for Summary Judgment of Infringement

Echologics moves for summary judgment that Orbis directly infringes claims 1 and 7 of the '888 Patent by making and using Orbis's "SmartCap" nozzle cap product with a fire hydrant ("the accused product").  (Doc. No. 108 at 1, 13.)  Echologics argues that summary judgment is appropriate because the accused product meets each and every limitation in asserted claims 1 and 7.  (Id. at 1, 4-13.)  In response, Orbis argues that Echologics's motion should be denied because there is a genuine dispute of material fact as to whether the accused product satisfies the "antenna cover" claim limitation.  (Doc. No. 125 at 1-6.)

### A.    Legal Standards Governing Patent Infringement

A patent infringement analysis proceeds in two steps.  Niazi Licensing Corp. v. St. Jude Med. S.C., Inc., 30 F.4th 1339, 1350 (Fed. Cir. 2022); JVW Enterprises, Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1329 (Fed. Cir. 2005).  In the first step, the court construes the asserted claims as a matter of law.  See Niazi, 30 F.4th at 1351; JVW, 424 F.3d at 1329.  In the second step, the factfinder compares the properly construed claims to the accused method or device.  See id.

"'The patentee bears the burden of proving infringement by a preponderance of the evidence.'"  Creative Compounds, LLC v. Starmark Labs., 651 F.3d 1303, 1314 (Fed. Cir. 2011); see Medtronic, Inc. v. Mirowski Fam. Ventures, LLC, 571 U.S. 191, 193 (2014) ("A patentee ordinarily bears the burden of proving infringement.").  "To prove infringement, the plaintiff bears the burden of proof to show the presence of every element or its equivalent in the accused device."  Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1301 (Fed. Cir. 2011); accord Star Sci., Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1378 (Fed. Cir. 2011).  "'Infringement is a question of fact.'"  GlaxoSmithKline LLC v. Teva Pharms. USA, Inc., 7 F.4th 1320, 1327 (Fed. Cir. 2021) (quoting Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1309 (Fed. Cir. 2009)).  "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either

literally or under the doctrine of equivalents." PC Connector Sols. LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005); see EMD Millipore Corp. v. AllPure Techs., Inc., 768 F.3d 1196, 1201 (Fed. Cir. 2014).

### B.    Legal Standards Governing Claim Construction

Because the first step in an infringement analysis is for the Court to construe the asserted claims as a matter of law, the Court sets forth the following legal standards governing claim construction. Claim construction is an issue of law for the court to decide. Teva Pharms. USA, Inc. v. Sandoz, Inc., 574 U.S. 318, 326 (2015); Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). Although claim construction is ultimately a question of law, "subsidiary factfinding is sometimes necessary." Teva, 574 U.S. at 326.

"It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citations omitted). "The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citation omitted).

Claim terms "'are generally given their ordinary and customary meaning[,]'" which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Phillips, 415 F.3d at 1312–13. "In some cases, the ordinary meaning of claim language as understood by a [POSITA] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314. "However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent." O2 Micro, 521 F.3d at 1360. If the meaning of the term is not readily apparent, the court must look to "'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" Phillips, 415 F.3d at 1314 (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "Those sources include 'the words of the

claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence.'" Id. (quoting Innova, 381 F.3d at 1116); see Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1217–18 (Fed. Cir. 2014).

In determining the proper construction of a claim, a court should first look to the language of the claims.  See Allergan Sales, LLC v. Sandoz, Inc., 935 F.3d 1370, 1373 (Fed. Cir. 2019) ("'[C]laim construction must begin with the words of the claims themselves.'"); Source Vagabond Sys. Ltd. v. Hydrapak, Inc., 753 F.3d 1291, 1299 (Fed. Cir. 2014) ("'a claim construction analysis must begin and remain centered on the claim language itself'").  The context in which a disputed term is used in the asserted claims may provide substantial guidance as to the meaning of the term.  See Phillips, 415 F.3d at 1314.

A court must also read claims "in view of the specification, of which they are a part." Markman, 52 F.3d at 979; see 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.").  "'Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term.'" Vederi, LLC v. Google, Inc., 744 F.3d 1376, 1382 (Fed. Cir. 2014) (quoting AIA Eng'g Ltd. v. Magotteaux Int'l S/A, 657 F.3d 1264, 1272 (Fed. Cir. 2011)).

But "[t]he written description part of the specification does not delimit the right to exclude.  That is the function and purpose of claims." Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc).  Therefore, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1327 (Fed. Cir. 2012); accord Openwave Sys., Inc. v. Apple Inc., 808 F.3d 509, 514 (Fed. Cir. 2015).

In addition to the claim language and the specification, the patent's prosecution history may be considered if it is in evidence.  Phillips, 415 F.3d at 1317.  The prosecution history "consists of the complete record of the proceedings before the [Patent and

Trademark Office ("PTO")] and includes the prior art cited during the examination of the patent." Id.  "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." Id.  "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Id.

In most situations, analysis of the intrinsic evidence will resolve claim construction disputes.  See Vitronics, 90 F.3d at 1583; Teva, 574 U.S. at 331; see also Seabed Geosolutions (US) Inc. v. Magseis FF LLC, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("If the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence.").  However, "[w]here the intrinsic record is ambiguous, and when necessary," district courts may "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting Phillips, 415 F.3d at 1317).  A court must evaluate all extrinsic evidence in light of the intrinsic evidence. Phillips, 415 F.3d at 1319.  "'[E]xtrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims.'" Genuine Enabling Tech. LLC v. Nintendo Co., 29 F.4th 1365, 1373 (Fed. Cir. 2022); see also Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'").  In cases where subsidiary facts contained in the extrinsic evidence "are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence." Teva, 574 U.S. at 332.

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." O2 Micro, 521 F.3d at 1362; see also Eon Corp. IP Holdings v. Silver Spring Networks, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016) ("'[O]nly those terms need be construed that are in controversy, and only to the extent necessary to

resolve the controversy.'").  In certain situations, it is appropriate for a court to determine that a claim term needs no construction and its plain and ordinary meaning applies.  <u>O2 Micro</u>, 521 F.3d at 1360; <u>Phillips</u>, 415 F.3d at 1314.  But "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." <u>O2 Micro</u>, 521 F.3d at 1361.  If the parties dispute the scope of a certain claim term, it is the court's duty to resolve the dispute.  <u>Id.</u> at 1362; <u>Eon</u>, 815 F.3d at 1318.

    C.    <u>Analysis</u>

Echologics contends that the accused product infringes independent claim 1 and dependent claim 7 of the '888 Patent because the accused product satisfies each and every limitation in those asserted claims.  (Doc. No. 108 at 4-13.)  In response, Orbis argues that there is a genuine dispute of material fact as to whether the accused product satisfies the "antenna cover" claim limitation as construed by the Court.  (Doc. No. 125 at 1-6.)

Independent claim 1 of the '888 Patent claims "[a]n infrastructure monitor assembly comprising:" among other things "an antenna cover attached to the nozzle cap." '888 Patent col. 18 ll. 6, 19.  In the claim construction order, the Court adopted Echologics's alternative proposed construction for the term "antenna cover," and the Court construed the term as "a structure that protects or conceals an antenna." (Doc. No. 64 at 13-14.)

In an effort to establish direct infringement, Echologics and its expert identify the "SmartCap label" of the accused product as satisfying the "antenna cover" claim limitation. (Doc. No. 108 at 6-11; Doc. No. 108, Ex. 4, Young Expert Report ¶¶ 63-66.)  In her rebuttal expert report, Orbis's technical expert, Dr. Cameron, opines that the accused product does not satisfy the "antenna cover" limitation in claim 1 of the '888 Patent.  (Doc. No. 108-1, Ex. 20, Cameron Rebuttal Expert Report ¶¶ 41-49.)  To support her opinion, Dr. Cameron explains:

> Dr. Young identifies the SmartCap label or sticker as the claimed antenna cover.  But the SmartCap label is not an antenna cover because it is not a

structure.

The Orbis SmartCap label is a 0.005" Lexan DP 8B35 polycarbonate. This thin piece of Lexan film is only 5 thousandths of inch thick. A person of ordinary skill in the art would recognize it as a "sheet" or "film," but not as a "structure."

A person or ordinary skill in the art would consider "structure" to denote something with greater stiffness or something composed of constituent parts.

(Id. ¶¶ 41-43 (citation omitted).) Dr. Cameron supports these opinions with citations to relevant technical dictionaries and testimony from a named inventor on the '888 Patent, Mr. Keefe.[1]  (See id. ¶¶ 44-47.) These opinions by Dr. Cameron in her report are sufficient to create a genuine dispute of material fact as to whether the accused product satisfies the "antenna cover" limitation, rendering summary judgment on this issue inappropriate. See Vasudevan Software, Inc. v. MicroStrategy, Inc., 782 F.3d 671, 683 (Fed. Cir. 2015) ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case." (quoting Provenz v. Miller, 102 F.3d 1478, 1490 (9th Cir. 1996))); Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp., 635 F.3d 1373, 1384 (Fed. Cir. 2011) ("Where there is a material dispute as to the credibility and

---

[1]    Echologics contends that the Federal Circuit has explained that inventor testimony is of little value in a definiteness analysis or a claim construction analysis. (Doc. No. 108 at 10 n.3 (citing Oakley, Inc. v. Sunglass Hut Int'l, 316 F.3d 1331, 1342 n.2 (Fed. Cir. 2003); Solomon v. Kimberly-Clark Corp., 216 F.3d 1372, 1379–80 (Fed. Cir. 2000)).) The Court rejects Echologics's reliance on the two cited cases. Oakley and Solomon are both pre-Phillips decisions.  In Phillips, the Federal Circuit sitting en banc held that district courts are authorized to rely on extrinsic evidence under appropriate circumstances during claim construction, and the Federal Circuit expressly listed "inventor testimony" as form of extrinsic evidence that a court may consider and rely on. 415 F.3d at 1317; accord Grace Instrument Indus., LLC v. Chandler Instruments Co., LLC, 57 F.4th 1001, 1008 (Fed. Cir. 2023); see, e.g., Bradium Techs. LLC v. Iancu, 923 F.3d 1032, 1044 (Fed. Cir. 2019) (affirming claim construction that was "consistent with the testimony of the inventor"). The Federal Circuit has further explained:  "The testimony of an inventor, of course, may be pertinent as a form of expert testimony, for example, as to understanding the established meaning of particular terms in the relevant art." Howmedica Osteonics Corp. v. Wright Med. Tech., Inc., 540 F.3d 1337, 1347 n.5 (Fed. Cir. 2008) (citing Phillips, 415 F.3d at 1318).

weight that should be afforded to conflicting expert reports, summary judgment is usually inappropriate.").

Echologics argues that the Court should reject Dr. Cameron's opinions because they are based on an untimely and flawed claim construction. (Doc. No. 108 at 9-10.) "[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." Markman, 517 U.S. at 372; accord Teva Pharm. USA, Inc. v. Sandoz, Inc., 574 U.S. 318, 321 (2015). "Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial." Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1321 (Fed. Cir. 2009); see Andersen Corp. v. Fiber Composites, LLC, 474 F.3d 1361, 1371 n.2 (Fed. Cir. 2007) (explaining that a "district court's claim construction" is "law of the case for purposes of the trial"). "No party may contradict the court's construction to a jury." Exergen, 575 F.3d at 1321. As such, "'[a]ny expert testimony must adhere to the court's claim constructions and must not apply alternative claim constructions.'" Pelican Int'l, Inc. v. Hobie Cat Co., No. 320CV02390RSHMSB, 2023 WL 2130379, at *3 (S.D. Cal. Feb. 10, 2023) (quoting Carucel Invs., L.P. v. Novatel Wireless, Inc., No. 16-cv-118-H-KSC, 2017 WL 1215838, at *16 (S.D. Cal. Apr. 3, 2017)); see Cordis Corp. v. Bos. Sci. Corp., 561 F.3d 1319, 1337 (Fed. Cir. 2009) ("[I]t is improper to argue claim construction to the jury because the 'risk of confusing the jury is high when experts opine on claim construction.'").

But the opinions at issue from Dr. Cameron acknowledge and apply the Court's construction for the term "antenna cover" in analyzing the accused product. (See Doc. No. 108-1, Ex. 20, Cameron Rebuttal Expert Report ¶¶ 41, 48.) As such, Dr. Cameron's opinions adhere to the Court's claim construction and are permissible. "'An expert can offer an opinion on how a court's claim construction should be applied to the facts of a case.'" Pelican, 2023 WL 2130379, at *8 (quoting Ravo v. Covidien LP, 55 F. Supp. 3d 766, 769 (W.D. Pa. 2014)).

The Court acknowledges that in her report, Dr. Cameron opines as to the meaning

21-cv-01147-H-AHG

of the word "structure" to a person of ordinary skill in the art and cites to technical dictionaries and inventor testimony to support her opinions.  (See Doc. No. 108-1, Ex. 20, Cameron Rebuttal Expert Report ¶¶ 43-46.)  Courts have held that "[a]t trial, parties may 'introduc[e] evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art,' so long as the evidence does not amount to 'argu[ing] claim construction to the jury.'"  Apple, Inc. v. Samsung Elecs. Co., No. 12-cv-630, 2014 WL 660857, at *3 (N.D. Cal. Feb. 20, 2014); accord Pelican, 2023 WL 2130379, at *9; CAO Lighting, Inc. v. Gen. Elec. Co., No. CV 20-681-GBW, 2023 WL 1930354, at *6 (D. Del. Jan. 30, 2023); Carucel, 2017 WL 1215838, at *16.  As such, it is not improper for Dr. Cameron to provide her view as to the plain and ordinary meaning of the word "structure."[2]  See Nichia Corp. v. Feit Elec. Co., Inc., No. CV 20-359-GW-EX, 2022 WL 17222250, at *11 (C.D. Cal. Oct. 12, 2022) ("'[I]t [i]s not improper for [Defendant] to offer its view of the plain and ordinary meaning to the jury.'" (quoting Avid Tech., Inc. v. Harmonic Inc., No. CV 11-1040-GMS, 2014 WL 7206301, at *4 (D. Del. Dec. 17, 2014)).

Echologics argues that to the extent Orbis and Dr. Cameron interpret the word "structure" as "something composed of constituent parts," that interpretation is incorrect

---

[2]     In it opposition, Orbis notes that this is not a situation where Dr. Cameron's opinions bear the hallmarks of claim construction analysis.  (Doc. No. 125 at 3.)  The Court agrees with Orbis.  District court have held that it is improper for an expert to opine as to the plain and ordinary meaning of a claim term and then support that opinion with citations to specification and the prosecution history as that constitutes an impermissible attempt to argue claim construction to the jury.  See CAO Lighting, 2023 WL 1930354, at *6 (quoting Ferring Pharms. Inc. v. PAR Pharm., Inc., No. 1:15-CV-00173-RGA, 2016 WL 6471246, at *1 (D. Del. Oct. 28, 2016)); Not Dead Yet Mfg., Inc. v. Pride Sols., LLC, 222 F. Supp. 3d 657, 661–62 (N.D. Ill. 2016); MediaTek inc. v. Freescale Semiconductor, Inc., No. 11-CV-5341 YGR, 2014 WL 971765, at *5 (N.D. Cal. Mar. 5, 2014); see also Cordis, 561 F.3d at 1337 ("[I]t is improper to argue claim construction to the jury . . . .").  But, as Orbis correctly notes, that is not what Dr. Cameron does in her report.  In the section of her report at issue, there are no citations to the specification or the prosecution history of the '888 Patent.  (See generally Doc. No. 108-1, Ex. 20, Cameron Rebuttal Expert Report ¶¶ 41-49.)

because it excludes the '888 Patent's preferred embodiment.  (Doc. No. 108 at 9-10.)  "'A claim construction that excludes a preferred embodiment is rarely, if ever correct and would require highly persuasive evidentiary support.'"  Kaufman v. Microsoft Corp., 34 F.4th 1360, 1372 (Fed. Cir. 2022) (quoting Epos Technologies Ltd. v. Pegasus Technologies Ltd., 766 F.3d 1338, 1347 (Fed. Cir. 2014)); see Duncan Parking Techs., Inc. v. IPS Grp., Inc., 914 F.3d 1347, 1364 (Fed. Cir. 2019) ("[A] claim construction that excludes the preferred embodiment is highly disfavored.").  Echologics asserts that Figure 6b in the specification of the '888 Patent depicts "antenna cover 620" as being one unitary part.  See '888 Patent fig. 6b, col. 4 ll. 1-2, col. 6 ll. 16-27.  Nevertheless, in its opposition, Orbis clarifies that Dr. Cameron will not opine to the jury that the word "structure" means "composed of constituent parts," and Dr. Cameron will not testify at trial that the claimed "antenna cover" "must be made of constituent parts."  (Doc. No. 125 at 4, 6.)

Further, Dr. Cameron's non-infringement opinion is not solely based on her contention that a POSITA would consider the word "structure" to denote "something composed of constituent parts."  (Doc. No. 108-1, Cameron Rebuttal Expert Report ¶ 43.) Dr. Cameron's opinion is also based on her contention that a POSITA would consider the word "structure" to denote "something with greater stiffness," and supports that opinion with citations to technical dictionaries and inventor testimony.  (Id. ¶¶ 43-46.)  Echologics does not identify anything in the intrinsic record that contradicts that opinion, and that opinion alone is sufficient to raise a genuine dispute of material fact defeating Echologics's motion for summary judgment.

In its reply brief, for the first time, Echologics asserts that the plain and ordinary meaning of the word "structure" in this context is "a part or element of the claimed apparatus."  (Doc. No. 132 at 2.)  There are several problems with this assertion.  First, it was improper for Echologics to raise this argument for the first time in a reply brief.  See Greisen v. Hanken, 925 F.3d 1097, 1115 (9th Cir. 2019) ("'[A] district court need not consider arguments raised for the first time in a reply brief.'" (quoting Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007)); Novosteel SA v. U.S., Bethlehem Steel Corp., 284 F.3d

1261, 1274 (Fed. Cir. 2002) ("[R]eply briefs . . . do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."); United States v. Boyce, 148 F. Supp. 2d 1069, 1085 (S.D. Cal. 2001) ("[I]t is improper for a party to raise a new argument in a reply brief."). Echologics never set forth what it considered to be the meaning of the word "structure" in its motion for summary judgment. (See generally Doc. No. 108.) Second, Echologics argues that "the term 'structure' is a ubiquitous term commonly used in patents (and claim constructions alike) to refer simply to a part or element arranged in a claimed apparatus." (Doc. No. 132 at 1.) Echologics does not cite to anything to support this contention. (See id.) Echologics attempts to support its proposed meaning of the word "structure" by citing to a dictionary definition for the word "structure." (Id. at 5 (citing Doc. No. 132-5, Nixon Decl. Ex. 25).) But that dictionary is of no help to Echologics as it does not define the word "structure" as a part or element of something else.[3] (See Doc. No. 132-5, Nixon Decl. Ex. 25.) As such, the Court rejects

---

[3] Further, new evidence submitted as part of a reply brief, such as Echologics' dictionary evidence, "'is improper' because it does not allow the [opposing party] an adequate opportunity to respond." Townsend v. Monster Beverage Corp., 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018); accord Mendell v. Am. Med. Response, Inc., No. 19-CV-01227-BAS-KSC, 2021 WL 347690, at *4 (S.D. Cal. Feb. 2, 2021). In addition, the definition cited by Echologics implies that a "structure" is something made up of multiple parts, contrary to the assertions made by Echologics in its motion. (See Doc. No. 132-5, Nixon Decl. Ex. 25 (defining "structure" as "something arranged in a definite pattern of organization") See also THE AMERICAN HERITAGE COLLEGE DICTIONARY, at 1347 (3d ed. 1997) (defining "structure" as "[s]omething made up of parts that are held or put together in a particular way"); CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/structure (defining "structure" as "the way in which the parts of a system or object are arranged or organized"). (See also Doc. No. 108-1, Ex. 20, Cameron Rebuttal Expert Report ¶¶ 44-45.) Further, in addition to the definition cited by Echologics, the cited dictionary also defines the word "structure" as "something (such as a building) that is constructed." (Doc. No. 132-5, Nixon Decl. Ex. 25.) See also THE AMERICAN HERITAGE COLLEGE DICTIONARY, at 1347 (3d ed. 1997) (defining "structure" as "[s]omething constructed"); COLLINS DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/structure ("A structure is something that has been built."); CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/structure

Echologics' belated, unsupported, and incorrect arguments regarding the meaning of the word "structure."

Echologics argues that even if the Court were to accept Orbis's interpretation of the word "structure" as requiring "something with greater stiffness," then summary judgment of infringement would still be appropriate. (Doc. No. 108 at 10-11.) Echologics contends that there is evidence in the record demonstrating that polycarbonate is a rigid enough material to be used for the claimed "antenna cover." (Id. (citing Doc. No. 108-1, Ex. 18; Doc. No. 101-12, Ex. 21; Doc. No. 101-13, Ex. 22 at 128); see also Doc. No. 132 at 5.) But in making this argument, Echologics misunderstands the appropriate standard of review at the summary judgment stage. At summary judgment, the evidence of the non-movant, here Orbis, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. And the Court must accept Dr. Cameron's factual assertions as true. See Charles Mach. Works, Inc. v. Vermeer Mfg. Co., 723 F.3d 1376, 1380 (Fed. Cir. 2013) ("For purposes of summary judgment, we must accept CMW's expert's factual assertions as true."). Echologics might disagree with Dr. Cameron's opinions and present contrary evidence, including opinions from its own expert and contrary inventor testimony. But, at best, that merely raises disputes of fact for the jury that may not be resolved at the summary judgment stage. See Crown Packaging, 635 F.3d at 1384; see, e.g., Pelican Int'l, Inc. v. Hobie Cat Co., No. 3:20-CV-02390-RSH-MSB, 2023 WL 2127994, at *10 (S.D. Cal. Feb. 10, 2023) (denying summary judgment of non-infringement where there was conflicting expert testimony); Orthopaedic Hosp. v. Encore

---

(defining "structure" as "something that has been made or built from parts, especially a large building").

In addition, the Court notes that at claim construction, the Court adopted Echologics' alternative proposed construction for the claim term "antenna cover." (See Doc. No 64 at 13-14.) And in proposing its construction for that claim term, Echologics chose to use the word "structure" and not the word "part" or "element." (See Doc. No. 43 at 7; Doc. No. 35-1, Ex. A at 1.)

Med. L.P., No. 19-CV-970 JLS (AHG), 2022 WL 254956, at *24 (S.D. Cal. Jan. 27, 2022) (denying summary judgment of infringement where the parties' arguments presented "a classic 'battle of the experts'"); Wi-LAN Inc. v. LG Elecs., Inc., 421 F. Supp. 3d 911, 934 (S.D. Cal. 2019) ("these competing expert opinions at best only create a genuine issue of material fact"); ChriMar Sys. Inc. v. Cisco Sys., Inc., No. 13-CV-01300-JSW, 2019 WL 7212316, at *6 (N.D. Cal. Sept. 27, 2019) ("In a case of dueling expert opinions, it is up to the jury to determine credibility, and summary judgment is inappropriate.").

In sum, there is a genuine dispute of material fact for the jury as to whether the label identified by Echologics constitutes an "antenna cover" under the Court's construction of that claim term. As a result, the Court denies Echologics's motion for summary judgment of infringement.

## III.    Defendant's Motion for Summary Judgment of Priority Date

Orbis moves for summary judgment that independent claim 1 of the '888 Patent and all of its dependent claims are entitled to a priority date of no earlier than November 18, 2017 – the filing date of the application from which the '888 Patent issued, Application No. 15/817,172 ("the '172 Application"). (Doc. No. 103-1 at 1.) In response, Echologics argues that Orbis's motion for summary judgment should be denied because the written description requirement is a question of fact and there is competing expert testimony on this issue. (Doc. No. 116 at 1.)

"'[T]o gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112.'" Arthrex, Inc. v. Smith & Nephew, Inc., 35 F.4th 1328, 1343 (Fed. Cir. 2022) (quoting Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1571 (Fed. Cir. 1997)). As such, for a parent application to provide the filing date for claims in a child application, the description in the parent must meet the written description requirement of 35 U.S.C. § 112(a) as to that claimed subject matter. Anascape, Ltd. v. Nintendo of Am. Inc., 601 F.3d 1333, 1337 (Fed. Cir. 2010); see Arthrex, 35 F.4th at 1343–45.

Section 112(a) of the Patent Act provides: "The specification shall contain a written description of the invention." 35 U.S.C. § 112(a). The written description requirement of 112(a) "is satisfied only if the inventor conveys with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrates that by disclosure in the specification of the patent." Biogen Int'l GMBH v. Mylan Pharms. Inc., 18 F.4th 1333, 1341–42 (Fed. Cir. 2021) (cleaned up) (quoting Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Lab'ys Inc., 923 F.3d 1368, 1376 (Fed. Cir. 2019)); see Ariad Pharms., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). "A precise definition of the invention is pivotal to establishing possession." Biogen, 18 F.4th at 1342 (citing Amgen Inc. v. Sanofi, 872 F.3d 1367, 1373 (Fed. Cir. 2017)). "An applicant may show possession of the claimed invention by describing it with all of its limitations using 'such descriptive means as words, structures, figures, diagrams, formulas, etc.'" Id. (quoting Lockwood, 107 F.3d at 1572).

"The term 'possession' in the context of written-description jurisprudence entails an 'objective inquiry into the four corners of the specification from the perspective of a [skilled artisan].'" Id. (quoting Ariad, 598 F.3d at 1351). Nevertheless, because the specification is viewed from the perspective of one skilled in the art, in some circumstances, "'a patentee may rely on information that is "well-known in the art"' for purposes of meeting the written description requirement." Ajinomoto Co. v. Int'l Trade Comm'n, 932 F.3d 1342, 1359 (Fed. Cir. 2019) (quoting Bos. Sci. Corp. v. Johnson & Johnson, 647 F.3d 1353, 1366 (Fed. Cir. 2011)); accord BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation, 28 F.4th 1247, 1264 (Fed. Cir. 2022); see, e.g., Centrak, Inc. v. Sonitor Techs., Inc., 915 F.3d 1360, 1369 (Fed. Cir. 2019).

"[T]he amount of disclosure necessary to satisfy the written-description requirement 'will necessarily vary depending on the context,' considering such facts as 'the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology,' and 'the predictability of the aspect at issue.'" Id. (quoting Ariad, 598 F.3d at 1351). "'Compliance with the written description requirement [of 35 U.S.C. §

112(a)] is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party.'" D Three Enterprises, LLC v. SunModo Corp., 890 F.3d 1042, 1047 (Fed. Cir. 2018) (quoting PowerOasis, Inc. v. T–Mobile USA, Inc., 522 F.3d 1299, 1307 (Fed. Cir. 2008)); see Ariad Pharms., 598 F.3d at 1351 ("Th[e] inquiry, as we have long held, is a question of fact.").

The '888 Patent issued from the '172 Application. See '888 Patent at [21]. The '888 Patent and the '172 Application both claim priority to Provisional Application No. 63/335,468 ("the '468 Provisional") filed on June 16, 2010. See '888 Patent at [60] (See Doc. No. 103-10, Ex. F at [0001].) In this action, Echologics asserts that the asserted claims of the '888 Patent are entitled to the '468 Provisional's priority date of June 16, 2010. (See Doc. No. 116 at 1; Doc. No. 116-3, Ex. A, Young Rebuttal Expert Report ¶ 26.)

Orbis contends that the asserted claims of the '888 Patent are not entitled to a priority date of June 16, 2010 because the '468 Provisional does not support the "nozzle cap comprising a metallic material" limitation in asserted claim 1 of the '888 Patent. (Doc. No. 103-1 at 6-7.) Orbis asserts that it can be observed from the '468 Provisional itself that it contains no express disclosure of a nozzle cap comprised of metallic material. (Id. at 6.) Orbis contends that with respect to the nozzle cap, the '468 Provisional only discloses "it preferably 'is made of a composite, plastic, nylon, or other synthetic or natural materials, or any other material that does not block transmissions to and from the device 110 or 111,' that the material preferably 'has the same fading characteristics of the paint used on the exterior of the fire hydrant' such that 'the paint and the nozzle cap 600 appear to be of the same material.'" (Id. at 4 (citing Doc. No. 103-11, Ex. G at p. 8 ll. 5-11).) Orbis also notes that the '468 Provisional discloses "that the antenna 'is preferably kept away from metal to achieve greater efficiency.'" (Id. (citing Doc. No. 103-11, Ex. G at p. 8 ll. 16-19).)

In response to Orbis's arguments, Echologics relies on the opinions of its technical expert, Dr. Young. In his rebuttal expert report, Dr. Young opines that "a POSA would understand from the '468 application that in at least some embodiments, if not the preferred embodiments, the nozzle cap comprises metallic material." (Doc. No. 116-3, Ex. A, Young

Rebuttal Expert Report ¶ 26.)  To support this opinion, Dr. Young notes a passage in the '468 Provisional explaining "that '[t]he location of the antenna is preferably kept away from metal to achieve greater efficiency.'"  (Id. ¶ 28 (quoting Doc. No. 103-11, Ex. G at p. 8 ll. 18-19).)  Dr. Young explains:

> A POSA would understand this statement to indicate that the nozzle cap is at least partially comprised of metallic materials (i.e. the nozzle cap comprises metal from which the antenna is preferably kept away).  This is readily apparent in view of Figs. 6a-c, which show the antenna extending outward and away from the nozzle cap, thus positioning the antenna away from the metal (either portions or in its entirety) of the nozzle cap.  Further, this statement expresses a preference, which means that in less preferred or even unpreferred embodiments, the antenna may not be kept away from the metal of the nozzle cap.  Thus, embodiments of the nozzle cap that are partially or entirely metal are clearly contemplated.

(Id.)  In addition, Dr. Young notes that: "Because it is only a preference, the specification does not teach a POSA away from the use of metal in the nozzle cap."  (Id. ¶ 29.)

Dr. Young further explains that "a POSA would understand that at or before the filing date of the '468 application, metal fire hydrants were the norm."  (Id. ¶ 30; see also id. ¶ 31 ("[I]n the years leading up to the filing date of the '468 application, it went without saying that to a POSA, hydrants and their components were primarily comprised of metal unless otherwise specified.").)  In light of this, Dr. Young opines: "Accordingly, it is still true today that a POSA would understand metallic materials to be the default material for structural components of fire hydrants, such as barrels, nozzles, nozzle caps, bonnets, etc., unless expressly indicated otherwise.  Therefore, a POSA would not only understand that the '468 application teaches metallic nozzle caps, the POSA would also appreciate the novelty and ingenuity of those embodiments wherein the nozzle cap, itself, includes nonmetallic materials."  (Id. ¶ 33.)  These opinions by Dr. Young are sufficient to create a genuine dispute of material fact as to whether the '468 Provisional satisfies the written description requirement as to the "nozzle cap comprising a metallic material" limitation.  See Vasudevan, 782 F.3d at 683 ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case." (quoting Provenz, 102

F.3d at 1490).

Orbis contends that Dr. Young's opinions are insufficient to raise a genuine dispute of material fact as to this written description issue because mere implication or possibility is insufficient to meet the explicit disclosure requirements for written description. (Doc. No. 129 at 3.) Orbis notes that it is not enough that an embodiment would be obvious to a POSITA. (Doc. No. 103-1 at 8-9; Doc. No. 129 at 3-5.) The Federal Circuit has held: "A disclosure in a parent application that merely renders the later-claimed invention obvious is not sufficient to meet the written description requirement." Tronzo v. Biomet, Inc., 156 F.3d 1154, 1158 (Fed. Cir. 1998); see Lockwood, 107 F.3d at 1572 ("Entitlement to a filing date does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed."). But the problem with Orbis's argument is that Dr. Young does not opine that the '468 Provisional discloses metallic nozzle caps because a metallic nozzle cap would have been obvious to a POSITA. Rather, Dr. Young opines that the '468 Provisional discloses metallic nozzle caps in light of the cited disclosures in the specification combined with information that is "well-known in the art." (See Doc. No. 116-3, Ex. A, Young Rebuttal Expert Report ¶¶ 28-33.) The Federal Circuit has explained that in some circumstances, "'a patentee may rely on information that is "well-known in the art" for purposes of meeting the written description requirement." Ajinomoto, 932 F.3d at 1359 (quoting Bos. Sci., 647 F.3d at 1366); accord BASF, 28 F.4th at 1264.[4] As such,

_____

[4] Orbis argues that the Federal Circuit's decisions in Ajinomoto and Boston Scientific are distinguishable from the present case on the grounds that those cases are "directed to the nuances of genus/species issues in the biological and chemical sciences," as opposed to the mechanical arts at issue here. (Doc. No. 129 at 3.) The Court rejects Orbis's asserted distinction. Although BASF, Ajinomoto, and Boston Scientific involved technology related to biological and chemical sciences, there is no language in those cases limiting their holdings to only apply to cases involving those forms of technology. Further, the Federal Circuit's decision in Centrak, Inc. v. Sonitor Techs., Inc., is not a case involving biological or chemical sciences; rather, the case involved technology related to "systems for locating and identifying portable devices using ultrasonic base stations." 915 F.3d at 1362. And in Centrak, the Federal Circuit relied on an expert's testimony regarding

the Court rejects these challenges to Dr. Young's opinions.

Orbis also challenges Dr. Young's opinions by citing to statements from his deposition testimony and a statement from Echologics' interrogatory responses. (Doc. No. 103-1 at 6-7; Doc. No. 129 at 6-7.) But at summary judgment, the evidence of the non-movant, here Echologics, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. And the Court must accept Dr. Young's factual assertions as true. See Charles Mach. Works, 723 F.3d at 1380 ("For purposes of summary judgment, we must accept CMW's expert's factual assertions as true."). At best, the cited evidence demonstrates that there is a genuine dispute of material fact as to this issue and provides material for cross-examination of Dr. Young at trial. It does not provide a basis for summary judgment. See Vasudevan, 782 F.3d at 683; Provenz, 102 F.3d at 1490.

In sum, there is a genuine dispute of material fact for the jury as to whether the '468 Provisional satisfies the written description requirement as to the "nozzle cap comprising a metallic material" limitation in asserted claim 1 of the '888 Patent. As a result, the Court denies Orbis's motion for partial summary judgment on priority date.

## **Conclusion**

For the reasons above, the Court denies Echologics's motion for partial summary judgment, and the Court denies Orbis's motion for partial summary judgment.

**IT IS SO ORDERED.**

DATED: March 27, 2023

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

"details [that] were known to skilled artisans" in holding that there was a material dispute of fact as to the written description issue in that case. 915 F.3d at 1369.

21-cv-01147-H-AHG